DICKSON & GANTT, Plaintiffs in Error, v. DESIRE'S ADMINISTRATOR, Defendant in Error.

1. The statutory covenant of indefeasible seizin, implied in the words "grant, bargain and sell," is a covenant running with the land; and, where possession accompanies the conveyance, it will enure to the benefit of the subsequent transferee in possession at the time of the substantial breach by the assertion of a paramount title; and that, too, although an intermediate conveyance may have been a sheriff's deed.

2. The measure of damages in a suit between the original parties on a covenant of seizin is the consideration given and received.

3. The right of recovery of a subsequent grantee against the first grantor must, it seems, be limited to his actual loss; it can not, however, exceed the liability of the first vendor to his immediate grantee.

4. In order to establish a right to recover for a breach of the covenant of seizin, it is not necessary to show an eviction; it is sufficient if some damage resulting from an outstanding paramount title be shown. If damages are sought to be recovered for the extinguishment of this title, it devolves upon the plaintiff to show the reasonableness of the price paid; and this is to be determined by the value of the land at the time of the extinguishment of the paramount title, and not by its value at the date of the previous transfers.

*Error to St. Louis Circuit Court.*

Plaintiffs, C. K. Dickson and T. T. Gantt, filed a demand in the Probate Court of St. Louis county, against the estate of Jacques Desiré. The demand, which was for the sum of $5712 50, was founded upon an alleged breach of a statutory covenant of indefeasible seizin, implied from the use of the words "grant, bargain and sell" in a deed of conveyance from the said Desiré to Letitia Duncan, from whom plaintiffs claimed by intermediate conveyances, as set forth in the agreed case stated below. This deed purported to convey the lot of land which was the subject matter of the controversy in the case of Chauvin v. Wagner & Dorsett, reported 18 Mo. Rep. 531, to which report reference must be had for a perfect understanding of this case. The demand of plaintiffs was allowed by the Probate Court, and the cause was appealed to the Circuit Court. The cause was submitted to the Circuit Court upon the following agreed statement of facts :

"The parties agree upon the following facts in this cause, and thereupon pray the judgment of the St. Louis Circuit Court. Either party may appeal or prosecute a writ of error to the Supreme Court.

"The facts are as follows : On the 8th August, 1835, Jacques Desiré made his deed in writing, recorded in book V, p. 31, and thereby, for the consideration of $6,500, to him paid by Letitia Duncan, conveyed to her in fee a lot of ground in block 131, on Market street, St. Louis, having a front of 67 6-12 feet on Market street, which bounds it on the south, by a depth of 104 feet on Seventh street, which bounds it on the west ; and in and by said deed said Desiré covenanted with said Duncan, her heirs and assigns, that he was seized of an indefeasible estate in fee simple in said real estate, as will appear by reference to said deed, which forms part of this case. Said Letitia Duncan took immediate possession of said real estate, claiming the same under said deed, and continued seized and possessed thereof until the 16th day of December, 1846,

when all the right, title, claim and estate of the said Letitia Duncan therein was sold to Walter H. Dorsett by the sheriff of St. Louis county, by virtue of a regular execution issued on a valid judgment against said Duncan. The said Dorsett thereupon immediately took possession of said real estate, and continued seized and possessed thereof until May 12th, 1855, when the heirs of Emily Chauvin, claiming the same by title alleged to be paramount to that of Desiré, by the judgment of the St. Louis Court of Common Pleas, recovered against the said Dorsett the possession of said real estate and damages for withholding the possession thereof, and costs. Said judgment was given in a suit begun on 24th August, 1850; and notice of the institution thereof was given to the administrator of Desiré by said Dorsett in the month of February, 1851, before the said cause was tried. Said cause was taken to the Supreme Court of Missouri, and decided, as will appear by reference to 18 Mo. Rep. 531. The record of that case may be referred to by either side as part of this case.

" Prior to the said judgment of the St. Louis Court of Common Pleas in May, 1855, said Dorsett had conveyed to the said plaintiffs, Dickson and Gantt, by quit claim deed, all his interest in said land, and also his right of action, if any, to him accruing, against the estate of said Desiré; and they, the said Dickson and Gantt, considering the decision in the case of Chauvin v. Dorsett (18 Mo. 531), to be conclusive of the rights of the litigants, made a compromise with the heirs of Emily Chauvin prior to the 12th day of May, 1855, by means of which the said Dickson and Gantt paid to said heirs the sum of $500; and a petition was filed setting forth that the said Dickson and Gantt were entitled to the one moiety of said tract of land; and the heirs of Emily Chauvin to the other moiety; and an order was made by the St. Louis Land Court for the sale of said real estate, which was done; and at the sale, Dickson and Gantt became the purchasers, and received the sheriff's deed therefor.

" There was no express assignment by Mrs. Duncan of the

covenant of indefeasible seizin made by Desiré to Duncan as aforesaid. Plaintiffs claim that it passed to Dorsett, and from Dorsett to them, by the conveyances and transfers above recited, as an incident to the estate of Letitia Duncan; which is denied by the administrator of Desiré. Plaintiffs also say that the seizin of Dorsett, vendee of Duncan, was defeated by the paramount title of the heirs of Chauvin, and the recovery aforesaid. The administrator denies that the title of the heirs of Chauvin was paramount; and by this objection, denies that the decision in the case of Chauvin v. Dorsett is law, or is conclusive on Desiré, or that said judgment, so rendered on May 12th, 1855, is conclusive upon Desiré.

" Plaintiffs, now respondents, say that they have lost, or that Dorsett, under whom they claim, has lost, by reason of the failure of said Desiré's title, and the breach of said covenant of seizin, the one half of said real estate, and $500 in money ; and they claim to recover against the estate of Jacques Desiré damages amounting to one half of the purchase money received by Desiré, and interest thereon from the 24th August, 1845 ; together with the sum of $500 and interest thereon, from the first day of April, 1855."

Said deed referred to in the above agreed case, so far as it is necessary to set forth the same, is as follows :

" This deed, made this eighth day of August, in the year of our Lord one thousand eight hundred and thirty-five, between Jacques Desiré and Pelagie his wife, grantors of the first part, and Letitia Duncan, grantee of the second part, all of the city and county of St. Louis, and state of Missouri, witnesseth, that the said grantors for and in consideration of the sum of six thousand five hundred dollars, to them in hand paid by the said grantee at and before the sealing and delivery thereof, the receipt whereof is hereby acknowledged, have *granted, bargained and sold*, and by these presents do *grant, bargain and sell* unto the said Letitia Duncan, her heirs and assigns, a certain lot, piece, or parcel of ground [describing the same]," &c.

Upon this agreed case, the Circuit Court gave judgment

for the defendant. Exceptions were duly taken. The case is brought to this court by writ of error.

*T. T. Gantt*, for plaintiffs in error.

I. Dickson and Gantt have all the right to sue on the covenant of Desiré, which accrued to Walter H. Dorsett.

II. Walter H. Dorsett became entitled to the benefit of this covenant, upon his purchase of all of the interest of the covenantee in the land at sheriff's sale.

III. That the decision of the Supreme Court in this cause, (Chauvin v. Wagner & Dorsett, (18 Mo. 531,) in a proceeding of which the administrator of Desiré had notice, and the judgment of the St. Louis Court of Common Pleas upon that decision, are conclusive as to the breach of the covenant of indefeasible seizin ; in other words,

IV. That Desiré's administrator can not aver against that judgment, that Desiré was seized according to the said covenant, or that the said covenant has not been broken.

V. That, although the seizin of Dorsett was altogether defeated by said judgment, yet the damages occasioned by the breach must be restricted to what was actually lost ; which was the half of the land, and the sum of five hundred dollars ; and the measure of damages for the loss of one half of the land, is the one half of the purchase money paid by Mrs. Duncan, and the interest thereon, from a period of five years before the beginning of the suit in which the land was lost ; i. e., 24th August, 1845. For the sum of $3,250 and interest since 24th August, 1845, and for $500 with interest, from 1st April, 1855, therefore, plaintiff in error asks judgment.

The covenant of *indefeasible* seizin more nearly resembles a covenant for quiet enjoyment, or a covenant against any encumbrance, whereby an estate may be defeated, than a mere covenant of present seizin, with which it has been sometimes confounded. (Stannard v. Eldridge, 16 Johns. 254 ; 7 Johns. 358.) Up to the defeating of the seizin only nominal damages could have been recovered on such a covenant. The covenant is one made in respect of a tract of land ; all connection

between Mrs. Duncan and the land was severed in 1846; and, in fact, she was in nowise damnified by the breach of the covenant. Its breach was not suspected when the sheriff sold her interest in the land to Dorsett. Does the right of action reside in her? She was not damaged. Dorsett has no recourse on her. Shall she be permitted, nevertheless, to claim the benefit of this covenant, and to recover or release the damages occasioned by its breach? The Supreme Court held otherwise in the case of Alexander v. Heisterhagen et al. (13 Mo. 271.) Now, by virtue of the practice act of 1849, the beneficial interest passes with the legal title to the assignee of a chose in action. There is nothing in the case of Collier v. Gamble, (10 Mo. 466,) which militates against this doctrine. In that case, it was merely decided that an action could not be brought in the name of the assignee of the covenant of indefeasible seizin. It was not decided then or since that the covenantee, and no one else, notwithstanding a sale by deed of quit claim, could recover upon this covenant; and it is nowhere intimated that a sale by the covenantee extinguishes the covenant. In the case of Lawless v. Collier's heirs, (19 Mo. 480,) the defendant set up in his answer the liability under which he lay to the person to whom the title which Gamble had acquired from Collier, such as it was, had passed. And it was part of the case of plaintiff that Mills and those to whom Gamble had conveyed, had been made secure and quiet by Gamble himself.

The case of Chauvin v. Wagner & Dorsett, (18 Mo. 531,) was laboriously argued, and the case was maturely considered by the court. The judgment of the Supreme Court must be held to be conclusive as to the breach of the covenant of seizin in Desiré's deed to Mrs. Duncan. (See 1 East, 541; 14 Ves. 591; 8 T. R. 503; 9 Mo. 466.)

*J. R. Shepley*, for defendant in error.

I. The covenant of indefeasible seizin, contained in the words "grant, bargain and sell" in the deed of Desiré to Mrs. Duncan, does not run with the land, and the plaintiff can take no rights thereunder in any event. They can not take the benefit

of that covenant, because the covenant, if broken at all, was broken as soon as made.   The right of action is immediately fixed in the grantee in the deed, and the grantee could sue upon it and recover nominal damages the very day after the execution and delivery of the deed.   The liability of the grantor to the grantee is a thing fixed at once, but the amount of it is determinable upon the situation of the grantee, whether he has been evicted or retains possession of the land ; but it is a damage *already* sustained by a covenant broken.   This covenant is not a continuing covenant which runs on until broken by an actual eviction or something tantamount thereto.   How, then, can any thing short of an actual assignment of that present right of action by the person having it, transfer that right ? Our Supreme Court, in the case of Collier v. Gamble, (10 Mo. 466,) expressly held, both that the covenant is broken as soon as made, and also that it does not run with the land.   In taking a deed for land, the grantee may have two kinds of covenants, those which run with the land and those which do not, or both, as he and his grantor may agree.   It may be, as in this case, that the grantee is content to receive only those which do not run with the land.   By not giving a general warranty the grantor chooses to limit his liability to his immediate grantee, and as long as the grantee holds the land, he is just as responsible for a failure of title as he could make himself by any form of words.   But the moment the land passes from the grantee, then the liability of the grantor ceases, or at least can only be enforced by the grantee or his assignee, by special assignment of the covenant and right of action thereunder. (See also Lawless v. Collier's exec'r, 10 Mo. 480 ; Bachus' adm'r v. McCay, 3 Ohio, 216.)   After breach all covenants even of warranty do not pass as incidents of the estate.   (21 Wend. 125-6 ; 14 Pick. 167, 171 ; 16 ib. 68.   See, also, 5 Conn. 487, 505, 508.)   Even if in some cases the person who stood in the position of a subsequent grantee, but who had no assignment of the covenant from the immediate grantee, could take the benefit of the covenant, yet, as Dorsett, under whom

11—VOL. XXIII.

the plaintiffs derive title, took title under a sheriff's sale of the interest of Mrs. Duncan in the land, they stand in no position to invoke any equities in their favor.   Their right, if they have any, is an equitable one.   The purchaser at the sheriff's sale merely took the title which the debtor had in the land at the time of the sale, and the benefit of those covenants that run with the land.   In any event, the subsequent grantees of the land only, without any special transfer of the covenant, can not be subrogated to the rights of the immediate covenantee, unless the deed from the immediate covenantee contain some covenant by which he is bound to make good the title.   A sheriff's deed or a mere quit claim can not have such an operation.   (3 Johns. 362 ; Cornell v. Jackson, 3 Cush. 509 ; Wyman v. Ballard, 12 Mass. 304 ; Chaplain v. Briscoe, 11 S. & M. 372.)

II. Even if it be admitted that the covenant is, in equity, an incident of the estate, for the breach of which an action under our code could be maintained by the subsequent grantee in his own name, yet, under the facts of the case, no recovery can be had.   The case of Chauvin v. Wagner & Dorsett, (18 Mo. 531,) was simply reversed in the Supreme Court, and remanded.   Under the decision in that case, Desiré's representatives had a right to have a jury pass upon the question of re-delivery of the deed to Desiré, and also to call upon Dorsett to exhaust every means of defence before coming upon them. Plaintiffs had no right to compromise away the rights of the representatives of Desiré to have the matter tried.   Desiré's representatives did not assent to the compromise.   The principle contended for would be a most dangerous one.   The very fact that a compromise was effected on the terms mentioned in the agreed case, is conclusive that no such compromise ought to have been effected.   If the case was so clear against Dorsett as the plaintiffs would have us suppose, how does it happen that the Chauvin heirs relinquished half of a lot of ground which the plaintiffs ask us to pay over $5000 for ?

LEONARD, Judge, delivered the opinion of the court.

The question here is as to the capacity of the statute cove-nant of title, implied from the use of the words " grant, bar-gain and sell," to run with the land where the breach com-plained of is the total want of an estate in fee in the grantor. The possession of the land passed with the deed, and the title of the parties, whose claim to the damages is here sought to be enforced, is derived from the first grantee, through a sheriff's conveyance, made upon an execution sale. It is thus seen that we are to deal with a question that has been the subject of fre-quent discussion in the courts of justice, on both sides of the Atlantic, and upon which it is impossible to reconcile the deci-sions not merely of different courts, but of the same courts at different periods of time. We proceed to state what we consi-der the general principles of law applicable to the subject, and then, applying these principles to the case before us, will state the practical results at which we have arrived.

The sale of a thing imports, from its very nature, an obliga-tion on the part of the seller to secure to the purchaser the pos-session and enjoyment of the thing bought, *the right to pos-sess and enjoy being really that which is purchased.* The obligation, therefore, is an incident of the transferred owner-ship, and goes along with it for its protection ; and, in order to afford the holder a just compensation when it is disturbed or lost, the benefit of the obligation devolves of course upon the successive owners. In this manner, it works out the purpose for which it is raised, by holding the original seller, who has the equivalent for the land in his own hands, to his just responsibi-lity, and by yielding the indemnity to the party who has sus-tained the loss, and is entitled by succession as the last pur-chaser to the rights of the preceding proprietors in the same chain of title. This natural warranty of title, however, was not recognized by the common law. It was allowed upon the sale of a personal chattel, where the seller was in possession as the apparent owner ; but in reference to real property, the maxim

was adopted "*caveat emptor;*" and in such sales, therefore, a conventional warranty was resorted to in practice, which, attaching itself to the estate conveyed, ran along with the land as an incident to it for the benefit of the successive owners. The effect of this engagement was to oblige the warrantor to defend the estate to which it was annexed, into whosoever hands it went, which it accomplished by estoppel or rebutter, when the attack came from the warrantor himself, and by a recovery of other lands of equal value upon voucher or "*warrantia chartæ*," when the attack came from a stranger; and although this conventional warranty of the common law was considered so entirely an accessary obligation that it could subsist only as an incident to some estate in the land, this produced no inconvenience in the ancient system of conveyancing by feoffment and other similar assurances, which, operating *upon the possession*, created by their own force estates *de facto*, (tortious estates, as they were called,) sufficient to support the warranty, and carry it along with the land to all the subsequent successors. In the progress of time, however, other modes of transfer were introduced under the statute of uses, which operated upon the *right only;* and the present covenants of title superseded in English conveyancing the ancient warranty of the common law, which, yielding a recovery in money instead of land, were, for that reason, deemed personal covenants. But they also, without distinction, *until broken*, from their own nature and purpose, ran with the land, in the same manner as the ancient real warranty. When a breach occurs, however, they are converted into mere rights of action, and these rights are then arrested in the hands of the party who is the owner for the time being, and the action lies where it falls, under the ancient common law rule that forbids the assignment of these rights.

There seems, however, to be a distinction between the doctrine of the English courts and of some of the leading courts in the United States, as to the character of the breach of a covenant of seizin, that will produce this effect; the former

holding that it must be a final, complete' breach, giving a right of substantial recovery ; while in the latter, the doctrine seems to be that a mere nominal breach, from which no real damage results, is sufficient to merge the covenant in the right of action, and to deprive it of the capacity of running with the land. The English doctrine is to be found in the case of Kingdon v. Nottle, (4 Maule & Selw. 53,) which was an action by the devisee of the land upon the covenant of seizin in the defendant's conveyance in fee, and it has been followed in Indiana, (Morton v. Baker, 5 Blackf. 232) ; and in Ohio, (Backus v. McCoy, 3 Ohio ; Foote v. Barnett, 10 id. 317 ; Devore v. Sunderland, 17 id. 55) ; and, in reference to the covenant against encumbrances in North Carolina, (McCrady v. Brisbane, 1, Nott & McCord, 104) ; and formerly in Massachusetts, (Prescott v. Trueman, 4 Mass. 627, and Sprague v. Baker, 17 id. 588.) But now in Massachusetts, as well as New York, and several other states, the covenant of seizin is considered to be, under all circumstances, a covenant in the present tense, which, if broken at all, is broken at the moment of its creation, and is immediately converted into a mere chose in action, which is incapable of running with the land. The rule seems to be the same, both here and in England, that the breach extinguishes the covenant and renders it incapable of running with the land ; but the difference is in its application—in determining under what circumstances the breach is to be considered as having this effect ; the English courts holding that the breach of the covenant of seizin is not final and complete until the *right of substantial recovery* exists, while in most of the United States this effect is supposed to result from the formal breach, without any regard to the question of damage.

In the English case of Kingdon v. Nottle, before referred to, where the possession passed with the deed, Lord Ellenborough remarked that " here the covenant passes with the land to the devisee, and has been broken in the time of the devisee *;* for, so long as the defendant has not a good title, there is a continuing breach, and it is not like a covenant to do an act of

solitary performance, but is in the nature of a covenant to do a thing *toties quoties*, as the exigency of the case may require. Here, according to the letter, there has been a breach in the testator's lifetime ; but, according to the spirit, the substantial breach is in the time of the devisee, for she has thereby got the fruit of the covenant in not being able to dispose of the estate." These observations were severely criticised in Mitchell v. Warner, (5 Conn. 497,) where it was said by the Chief Justice, " I affirm that the novel idea attending the breach in the testator's lifetime, by calling it a continuing breach, is an ingenious suggestion, but of no substantial import.   Every breach of contract is a continuing one until it is in some manner healed ; but the great question is, to whom does it continue as a breach ?   The only answer is to the person who had the title to the contract when it was first broken.   It remains as it was, a breach to the same person who first had a cause of action upon it.   If it be any thing more, it is not a continuing breach, but a new existence.   In the next place, I assert that it is like a covenant to do an act of solitary performance ; and for this plain reason, that it is in its nature a covenant for a solitary act, and not for a successive one.   It has no analogy to a covenant to do a future act at different times, which may undergo repeated breaches.   It can not be partly broken and partly sound, but the grantor is seized or not seized, and therefore the covenant is inviolate or violated wholly.   I therefore conclude that the judges pronouncing it would have been of an opinion different from the one expressed, had they recognized the principle, here well established, that the breach of the covenant of seizin is in its nature total, and the measure of damages the whole consideration paid for the land."

It is thus seen that the real point of difference is, that in England the covenant of seizin is, under *some circumstances, a mere covenant of indemnity ;* but in most of the United States, it is *always* a present covenant, which, if ever broken, must be broken as soon as made, and upon which, of course,

only one recovery can be had, the right to which accrues as soon as the covenant is entered into.

The true question would then seem to be, at what time the right of substantial recovery accrues; whether at the moment of the delivery of the deed; or, is it postponed under any circumstances until the actual damage is sustained? It would seem quite impossible to hold, as we were asked to do in a case before us at the present term, that the cause of action accrues immediately, so as to set the statute of limitations in motion against the party, if we are to hold that during the whole period of its running, the party could not have recovered any thing more than nominal damages; and it would seem quite unreasonable to say that the party could not have a real recovery upon the mere formal breach, because no actual damage has resulted to him from the want of title, and yet afterwards to allow him to recover not on account of any damage that had accrued to himself, but in respect to the loss that had fallen upon his grantee.

Our course of decision must, if possible, be such as to avoid these difficulties. In Collier v. Gamble, (10 Mo. 466,) the covenant was created by the statute, and the land had passed and been enjoyed according to the deed, and the breach complained of was a paramount title in a stranger, that had not yet been either asserted or extinguished. In the opinion of the court, it is remarked that " the existence of a paramount title, whether it has been asserted or not, is a breach of the statutory covenant; and if for such breach the grantee is permitted to recover the consideration money and interest, he may get both the purchase money and retain possession of the land under a title which is defeasible, but which may in fact never be defeated. In such cases, the reasonable rule is to recover nominal damages only, until the estate conveyed is defeated or the right to defeat it has been extinguished. (Prescott v. Trueman, 4 Mass. 627; and Wyman v. Bollard, 12 id. 302.) This avoids the manifest injustice of permitting the plaintiff to recover the value of the land, and at the same time retain posses-

sion under a title which may never be disturbed, or the defects of which may be remedied by the payment of an inconsiderable sum. It is the rule which prevails in the construction of covenants against encumbrances, and our statutory covenant of seizin is, in fact, a covenant against encumbrances as well as of seizin." And the judgment was, that, under the circumstances of the case, the party was entitled to a nominal recovery only ; and, although it was also decided that the covenant did not, in reference to the breach, run with the land, so as to pass the benefit of it to the grantee of the covenantee, yet we may remark that the suit for the use of the last purchaser was in the name of the first grantee, under an express assignment of the right of action ; and so the result of the decision, as to the substantial rights of the parties, is not inconsistent with any we shall hold in the present case. The same doctrine, in reference to the recovery being nominal, seems to have been applied under similar circumstances, not only in the states to which we have already referred, but also in New York, (Delavrye v. Morris, 7 Johns. 358); in Maine, (Bean v. Mayo, 5 Maine, 94); and Vermont, (Richardson v. Dow, 5 Verm. 9). The effect of these decisions, we think, is to convert the covenant of seizin, under such circumstances, substantially into a covenant of indemnity against the damage that may result from the want of lawful title ; and if so, it leaves the capacity of the covenant to run with the land *untouched*, until the damage has actually resulted to the party. This is the view taken by the courts in Ohio, and, accordingly, in Backus' administrator v. McCoy, (3 Ohio, 216,) the judge, who declared the opinion of the court, laid down the doctrine that " when the heir or assignee acquires any interest in the land, however small, by even an imperfect or defective title, he shall be entitled to the benefit of all those covenants that concern the realty ; and when he has been evicted by permanent title, he is the party damnified by non-performance of the grantor's covenants, and for such may sustain an action. This seems to be reasonable in itself, as well as in accordance with the terms of

the covenant. By considering the covenant of seizin as a real covenant attendant upon the inheritance, it will form part of every grantee's security, and make that which otherwise must be either a dead letter or a means of injustice, a most useful and beneficial covenant—a dead letter, when an intermediate conveyance has taken place between the making of the covenant and the discovery of defect of title, and the covenantee refuses to bring suit—a means of injustice, when, after the covenantee has sold and conveyed without covenants, he brings and sustains an action on the ground that the covenant was broken the moment it was entered into, and could not, therefore, be assigned. When lands are granted in fee by such a conveyance as will pass a fee, and the grantor covenants that he is seized in fee, we can perceive no objection, legal or equitable, to this covenant, as well as the covenant of warranty, passing with the land, so long as the purchaser and the successive grantees under him remain in the undisturbed possession and enjoyment of the land;" and it was again reasserted, many years afterwards, in the recent case of Devore v. Sunderland (17 Ohio, 55). We are disposed to take a similar view of our statute covenant. It proceeded, no doubt, from an instinctive feeling of the moral propriety of requiring a party, who sells land, and not merely his own interest in it, whatever that may be, and conveys it by words of transfer appropriated to such a transaction, to secure to the purchaser, and those who succeed him in his rights, the enjoyment of the property sold, and to indemnify them, if it should be lost, by reason of any defect of title. This construction, we think, will best promote the object the legislature had in view, and subserve the purposes of justice in transactions of this kind ; and we may remark here, historically, that the state of Maine, in the recent revision of her laws, has expressly provided that the right of action upon a covenant of seizin shall vest in the assignee of the land, so as to enable him to sue and recover in his own right after an eviction by a title paramount. (R. S. 1841, tit. 10, chap. 115, sec. 16 ; Prescott v. Hobbie, 30 Maine,

346.) When, therefore, a defeasible title, or the possession without any title, has passed under the deed, we shall consider the statute obligation in respect to the title rather as one of indemnity, which, running with the land until the damage is sustained, enures to the benefit of the party on whom the loss falls. The general doctrine of the old law, as to the real warranty, that when no estate passes to which the warranty can be annexed, the benefit of it does not run to a subsequent assignee, admitting it to be applicable to the modern covenants of title, is obviated in cases like the present by the American decisions, that a conveyance by a grantor in possession under a claim of title passes an estate to the grantee sufficient to carry the covenants to any subsequent assignee. (Slater v. Rawson, Met. 439 ; Marston v. Hobbs, 2 Mass. 439 ; Willard v. Twitchel, 1 New Hamp. 178 ; Beddoes v. Wadsworth, 21 Wend. 120.)

We proceed now to apply these principles to the case before us. The deed under which Desiré, the original grantor, derived his title, was ineffectual to pass the fee, on account of the defect in the certificate of acknowledgment, as has been again decided at the present term ; but as the actual possession went along with the deed, the covenant attached itself to the land and ran with it, until the paramount title was discovered and asserted. The covenant accordingly passed under the sheriff's conveyance to Dorsett, not as an independent subject of sale, but as an incident to the possession and apparent ownership of the land, upon the same principle that it would have passed had the sale and transfer been made by the owner himself. When paramount title was asserted, the party upon whom the loss fell became entitled to an action on the covenant *for the damage he had sustained*. The amount of this damage, however, is not admitted in the agreed case, nor do we think there are sufficient facts in it from which we can ascertain the amount as a matter of law.

On a covenant of warranty or seizin, where the transaction remains between the original parties, the measure of damage is the value of the land at the time of the sale, as fixed

by the parties themselves in the price given and received. When, however, the original grantee has sold the land to another, and the second purchaser has been evicted, the damage he has sustained is the *value of the land at the time of his purchase*, and his right of recovery against the first grantor upon the original covenant must, of course, be limited to his actual loss, although it can not exceed the liability of the first vendor to his immediate grantee. These are our present views upon this subject; but as the question as to the amount of the damages has not been argued, and as the judgment must be reversed, what is said upon that subject need not be considered as concluding us in any subsequent investigation of the case. It is admitted that upon this covenant it is not necessary for the party to show an eviction, but then he must show an outstanding *paramount title* which has resulted in some damage to himself; and if he insists that he has extinguished this title, and seeks to recover the cost of it, he must show affirmatively that the price paid was reasonable; and whether this were so or not depends on the value of the lot at the time of the compromise, and not upon what it was worth either when Mrs. Duncan purchased, or when it was subsequently sold at sheriff's sale. Indeed it may be, for aught we know, that the whole lot, at the time of the compromise, was worth very little more than twice the sum then paid for half of it. If, however, it were in fact worth the five hundred, and one half the purchase money paid by Dorsett, then the price paid was reasonable, and he and those claiming his rights are entitled, as we now think, to recover these two sums ; but whether he will be entitled to interest upon the half of his purchase money, depends upon circumstances not now disclosed. (Lawless v. Collier's executors, 19 Mo. 485.) The judgment is accordingly reversed, and the cause remanded ; Judge Ryland concurring.