## JONES, Appellant, v. HASELTINE et al., Respondents.

**St. Louis Court of Appeals, April 30, 1907.**

**(Opinion by Bland, P. J.)**

1. **COVENANTS: Consideration: Nominal Damages.** In an action on a covenant of seizin, where there was no direct evidence of any consideration received by the covenantor, the covenantee was entitled to recover at least nominal damages.

2. ———: **Covenant of Seizin: Eviction: Limitations.** Eviction is not necessary to constitute a breach of the covenant of seizin, it is sufficient if some damage result from an outstanding paramount title; and the Statute of Limitations does not run in favor of the covenantor until the covenantee suffers actual loss.

**(Concurring Opinion by Nortoni, J.)**

3. ———: ———. A covenant of seizin in this State is more than a covenant *in praesenti*, ·and breached, if at all, when made, it is also a covenant of indemnity running with the land and inuring to subsequent grantees upon whom substantial loss may finally fall.

4. ———: ———: **Eviction.** The right of substantial recovery on a covenant of seizin accrues upon actual eviction, or where the covenantee extinguishes the paramount title to avoid eviction, or yields to it; but where the covenantee yields on the assertion of paramount title, the burden is on him, in an action on the covenant, to establish that the hostile title is paramount.

5. ———: ———: ———: **Yielding to Paramount Title on Assertion of It.** The owner of a paramount title to a lot asserted such title against the covenantee and it was agreed between the asserter of title and the covenantee that the former would purchase from the latter at a stipulated price, provided the title was found to be in him. Accordingly the purchase price was paid him and the matter referred to the attorneys of the two to settle the question as to who owned the title. It was found that the covenantee owned one-third and the asserter of title owned two-thirds. The covenantee thereupon delivered his deed, retaining one-third of the purchase price and refunding two-thirds. This was a surrendering of two-thirds of the lot on the assertion of the paramount title, and entitled the covenantee to recover against his covenantor on showing that such title was paramount.

6. ———: ———: **Measure of Damages.** In such case the measure of recovery was two-thirds the purchase price which the covenantee paid for the lot with interest.

7. ———: ———: **Consideration.** In an action on a covenant of seizin, the recital in the deed is prima facie evidence of the consideration paid as between the parties to the instrument.

8. ———: ———: ———. In an action on a covenant of seizin, the evidence is examined and held that evidence tending to show consideration other than the recited consideration was insufficient to overcome the prima facie presumption that the recited consideration was the real one.

9. ———: ———: **Statute of Limitations.** Where a conveyance was made with covenant of seizin, of property incumbered by mortgage, and the mortgage was subsequently foreclosed and the purchaser at the foreclosure sale asserted title to which the covenantee surrendered, his cause of action accrued on the surrender so that the Statute of Limitations did not begin to run until that time.

Appeal from Greene Circuit Court.—*Hon. Jas. T. Neville,* Judge.

REVERSED AND REMANDED.

*McLain Jones* and *J. T. White* for appellant.

(1) A covenantee may recover for a breach of a covenant of warranty without showing actual eviction; it is sufficient if he shows an assertion of a paramount title to which he has yielded either by surrendering possession or extinguishing the paramount title. Lambert v. Estes, 99 Mo. 608; Eagan v. Martin, 71 Mo. App. 65, 81 Mo. App. 676; Leet v. Gratz, 92 Mo. App. 431; Ward v. Ashbrook, 78 Mo. 517; Rawle on Covenants of Title (3 Ed.), pp. 280, 281, 283, 288, 289, 290 with notes on pages 281 to 283; Hall v. Bray, 51 Mo. 288; Morgan v. Railroad, 63 Mo. 129; Mumford v. Keet, 65 Mo. App. 502. (2) The Statute of Limitations does not run against an action on covenant of warranty until actual eviction or extinguishment of the paramount title; likewise the Statute of Limitations does not begin to run against an

action on a covenant against incumbrances until the encumbrance is extinguished or ouster suffered under it.

In this case plaintiff's cause of action did not accrue when he received his deed nor when the prior mortgage was foreclosed in 1894, but only when the paramount title of Nora C. McDaniel was asserted in 1903 and plaintiff paid his money to extinguish it. Wyatt v. Dunn, 93 Mo. 459; Hunt v. Marsh, 80 Mo. 396; Blondeau v. Sheridan, 81 Mo. 545; Walker v. Deaver, 79 Mo. 675; Priest v. Deaver, 22 Mo. App. 279; Taylor v. Priest, 21 Mo. App. 685; Buren v. Hubbell, 54 Mo. App. 617.

*Wright Bros. & Blair* for respondents.

(1) Plaintiff was required to show that Nora C. McDaniel's title was paramount. Hall v. Bray, 51 Mo. 292; Lambert v. Estes, 99 Mo. 608. (2) The legal title draws the possession to it. Sell v. McAnaw, 158 Mo. 471. (3) The recovery cannot exceed the consideration money and interest. Mumford v. Keet, 65 Mo. App. 506; Leet v. Gratz, 92 Mo. App. 431. (4) And it is the actual consideration that limits the damages, not that mentioned in the deed. 3 Washburn, Real Prop. (4 Ed.), p. 492; Pence v. Gabbert, 70 Mo. App. 209; Hall v. Bray, 51 Mo. 292. (5) Appellant failed to show any consideration for the deed of respondent to him. "This question went to the very heart of plaintiff's cause of action, because if he paid no consideration it stands to reason he had suffered no damage and was not entitled to recover what he had not paid." 3 Washburn on Real Prop. (4 Ed.), 492, 4 Kent, Com. (12 Ed.), Star page 475.

STATEMENT.—On February 10, 1888, S. A. and S. C. Haseltine and their wives, by their deed of trust, conveyed to B. R. Brewer, trustee for John Kincaid, the north half of the south half of southwest fractional

quarter of section six, township twenty-nine, range twenty-one, situated in Greene county, Missouri, to secure to Kincaid the payment of a promissory note for five hundred dollars, due three years after date. On November 24, 1894, the deed of trust was foreclosed by sale made by the trustee, at which sale, Laura C. McDaniel was the purchaser. She received a deed from the trustee, conveying the land to her. These deeds were duly recorded. On March 12, 1888, S. A., S. C., and S. I. Haseltine and their wives subdivided the aforesaid parcel of land into town lots, and made a plat thereof, which they duly executed and filed in the recorder's office of Greene county, designating the plat as Haseltine's Boulevard Addition to the city of Springfield. The lots on the plat were numbered from one to fifty-two inclusive. About March, 1888, the Haseltines executed to one Burgess a bond, presumably binding themselves to convey to Burgess lot No. 49, in the Haseltine addition. On the eighteenth of March, 1888, plaintiff loaned Burgess one hundred and fifty dollars, for which he took his note and an assignment of the Haseltine Bond as collateral security for the note. On July 1, 1892, the Haseltines and their wives executed and delivered to plaintiff, a general warranty deed, containing the words, "grant, bargain and sell" conveying to him lot No. 49, of the Haseltine addition in the city of Springfield. Plaintiff testified that he did not pay the Haseltines any money for the lot; that the deed was made to take up Burgess' indebtedness to him, and he supposed he turned the Burgess bond and note over at the same time he got the deed, but did not remember whether he turned them over to the Haseltines or to Burgess; did not know how the Haseltines and Burgess settled and did not know that the bond was a bond to convey the lot; knew it had something to do with the lot; that the Haseltines made him the deed to extinguish Burgess' indebtedness on the note, which amounted to the sum of two hundred and twenty-five

dollars at the time.   On March 17, 1903, plaintiff in con-
sideration of one hundred and fifty dollars, executed and
delivered to Nora C. McDaniel a quitclaim deed con-
veying to her all his right, title, and interest in the lot.
This transaction was brought about in the following
manner:  Nora C. McDaniel claimed to own an undivid-
ed two thirds interest in the lot.   Plaintiff claimed he
owned the whole of the lot.   They agreed that the value of
the lot was one hundred and fifty dollars, and that plain-
tiff would make her quitclaim deed to the lot for one
hundred and fifty dollars, with this understanding; that
Messrs. Tatlow and Massey should pass upon the title
and both  parties would abide their decision, and if it
was found by them that Mrs. McDaniel owned an undi-
vided two-thirds interest in the lot, plaintiff would re-
fund her one hundred dollars of the one hundred and fif-
ty paid.   Messrs. Tatlow and Massey made an examin-
ation and found that Mrs. McDaniel owned an undivided
two-thirds interest in the lot; whereupon plaintiff re-
funded to her one hundred dollars out of the one hun-
dred and fifty paid to him by her.   There was no evi-
dence that Burgess paid defendants anything on the lot.
The lot is vacant property, and plaintiff was never in
actual possession, though he paid taxes on it; nor does
the  evidence  show  Mrs.  McDaniel  was  ever  in
possession.   The action was for a breach of the cove-
nant of seizen of an indefeasible estate in fee simple.
The answer was a general denial and the plea of a five
and ten-year Statute of Limitations.   The court to whom
the parties submitted the issues rendered judgment for
defendants.

BLAND, P. J. (after stating the facts.)—There is
no direct evidence that defendants received any consid-
eration for the lot from either Burgess or plaintiff.   Only
a conjecture can be formed from plaintiff's evidence,

that defendants made a deed in consideration of a surrender to them of the Burgess bond and the cancellation of his note. But the deed imports a consideration, and if there was a breach of the covenant of seizin, plaintiff was entitled to at least nominal damages. In Allen v. Kennedy, 91 Mo. l. c. 329, 2 S. W. 142, it is said:

"As the covenant of seizin of an indefeasible estate in fee simple, the claim is, that this covenant if broken at all, is always broken when made, and does not run with the land. Whatever may be the rule elsewhere, with us, it is more than a covenant in the present tense. It is rather a covenant of indemnity, and it has often been held that it runs with the land to the extent that if a covenantee takes an estate, however defeasible, or if possession accompanies the deed, though no title pass, yet, in either event, this covenant runs with the land and inures to the subsequent grantee, upon whom the loss falls."

The legal title to an undivided interest in the land was in the trustee, Brewer, at the time defendants made the deed to plaintiff, and hence the covenant of seizin was broken at the moment of the execution and delivery of the deed. [Cockrell v. Proctor, 65 Mo. 41.] Defendants contend that an eviction was essential to entitle plaintiff to sue for a breach of the covenant of seizin. In Dickson v. Desire's Adm., 23 Mo. 151, and Cockrell v. Proctor, supra., it was held that an eviction is not necessary to constitute a breach of the covenant of seizin, that it is sufficient if some damage result from an outstanding paramount title. The covenant of seizin, being a continuing one running with the land, the Statute of Limitations did not run in favor of defendants as covenantors until plaintiff, the covenantee suffered actual loss. [Walker v. Deaver, 79 Mo. 664; Priest v. Deaver, 22 Mo. App. 276.] In any view of the case, we think plaintiff is entitled to recover at least nominal damages,

and reverse the judgment and remand the cause. *Goode, J.,* not sitting.

CONCURRING OPINION.

NORTONI, J.—I concur with Judge BLAND in reversing the judgment and remanding the cause, but do not concur entirely in the view of the case indicated by him in the opinion given, and therefore deem it proper to communicate my own views separately.

It appears that defendants executed and delivered the deed to plaintiff which contained the statutory words, "grant bargain and sell" from the employment of which there is implied a covenant, so far as this case is concerned; first, that the defendant grantors were then siezed of an indefeasible estate in fee simple in the lot mentioned, and second, that the lot was then free from incumbrances done or suffered by defendants or any person under whom they claimed. [R. S. 1899, sec. 907.] Now it appears that at the time it was executed and delivered, there was then outstanding and on record, against a two-thirds interest in the lot, a deed of trust, by virtue of which the legal title to a two-thirds interest in the lot had theretofore been conveyed and was then vested in Brewer, the trustee, to the use of Kincaid, with an equity of redemption only remaining in these defendants, the grantors, and this equity of redemption is all that passed to the plaintiff by the deed with respect to the two-thirds interest mentioned, whereas the covenant assured him an indefeasible estate therein. Now, upon this state of facts, the covenant, on the doctrine of its being a covenant *in praesenti,* was breached *eo instanti,* upon the delivery of the deed to the plaintiff. [Dickson v. Desire, 23 Mo. 151.] And his right of action for a technical breach and nominal recovery then accrued, provided he had paid some consideration, for if he had paid no consideration he suffered no damages, and was therefore entitled to no recovery. The dam-

ages never exceed the consideration paid. [Lambert v. Estes, 99 Mo. 604—608, 13 S. W. 284; 3 Washburn on Real Property (6 Ed.), sec. 2410.] The covenant of seizin, however, with us in Missouri, is more than a covenant in the present tense. It is rather a covenant of indemnity running with the land and inuring to the subsequent grantees upon whom the loss may finally fall. [Dickson v. Desire, 23 Mo. 151; Chambers v. Smith, 23 Mo. 174; Allen v. Kennedy, 91 Mo. 324.] And upon the principle that the covenant is one of indemnity running with the land to subsequent grantees, our courts pass over the technical breach operated upon the delivery of the deed and adhere to the doctrine that the cause of action for a substantial recovery accrues so as to initiate the operation of the Statute of Limitations, looking to its ultimate bar, upon the accrual of the right of substantial rather than the right of nominal recovery. [Chambers v. Smith, 23 Mo. 174; Leet v. Gratz, 124 Mo. App. 394, 101 S. W. 696, decided at this term of court.

It is important then, to ascertain what operates a breach of the covenant in that sense essential to render a cause of action for substantial recovery, and thereby initiate the Statute of Limitations. The rule is applied in some cases, that the right of substantial recovery accrues upon actual eviction which occurs, of course, when the grantee is ousted, or upon an eviction constructive in law, which is operated when the grantee, after judgment in ejectment establishing a paramount title, either purchases or extinguishes the paramount title in order to avoid an actual eviction, or yields to it after its paramountcy has been established. [Leet v. Gratz, 92 Mo. App. 422; Walker v. Deaver, 79 Mo. 644; Magwire v. Riggin, 44 Mo. 512; Dickson v. Desire, 23 Mo. 151.] And while under the circumstances, in many cases, it is essential to show either an actual or constructive eviction as indicated, it is well settled that a substantial recov-

ery may be had on the covenant of seizin upon the grantee showing an outstanding paramount title in another which has resulted in some damage to himself. [Dickson v. Desire, 23 Mo. 151-167; Cockrell v. Proctor, 65 Mo. 41-47; Hall v. Bray, 51 Mo. 288; Schnelle, etc., Lumber Co., v. Barlow, 34 'Fed. 853; 8 Amer. & Eng. Ency. Law (2 Ed.) 96.] And when a paramount title is asserted against that of the grantee in the deed, and such grantee is confronted with a possible action, which will result in his eviction, he is not compelled to await an actual eviction thereby, but on the contrary, may yield to the paramount title. Such yielding is equivalent to an eviction for which he may sue and recover substantial damages, but under such circumstances, it devolves upon the grantee to bear the burden of establishing in the suit against the covenantor, the paramountcy of the title to whch he has yielded. [Hall v. Bray, 51 Mo. 288; Ward v. Ashbrook, 78 Mo. 515; Lambert v. Estes, 99 Mo. 602; Magwire v. Riggin, 44 Mo. 512.] Now, on the facts in proof it appears the deed of trust was foreclosed at a date subsequent to the receipt of the deed by plaintiff, and at the sale thereunder, Mrs. McDaniel became the purchaser of a two-thirds interest in the lot, and thus the last vestige of plaintiff's right, his equity of redemption in the two-thirds interest, was extinguished. A few years thereafter, March 17, 1903, Mrs. McDaniel asserted her paramount title to the two-thirds of the lot in question and the plaintiff denied it, asserting he owned title to the entire lot. Mrs. McDaniel desired the lot. It was valued by the parties at $150, and during the pendency of the controversy with respect to whether the plaintiff owned the entire title or Mrs. McDaniel's two-thirds thereof, plaintiff executed to her a quit claim deed and she placed the amount of $150 in the plaintiff's hands with an agreement that the question of title would be referred to Messrs. Tatlow and Massey, and if it was determined

Mrs. McDaniel's title was paramount, plaintiff would surrender pro rata of the moneys of which he held, to be applied on the purchase price when the controversy was settled, and if it was determined plaintiff owned the entire lot, then he was to retain the full sum of $150 and she should have the lot under the quitclaim deed mentioned. Upon examination being made ,by Messrs. Tatlow and Massey, it was ascertained that Mrs. McDaniel was the rightful owner of the two-thirds of the lot and plaintiff, in compliance with his agreement surrendered to her $100 of, what otherwise would have been the purchase money. Here there is a clear case of the plaintiff surrendering two-thirds of the lot to the paramount title, for he surrendered two thirds of the title without price, and sold his one-third only for $50; that amount being one-third of the purchase price agreed upon for the entire lot had plaintiff owned the entire title. Now if the matter were to be determined by reference to what he might have received for the lot from Mrs. McDaniel, it could be said he was damaged in the sum of $100. Plaintiff's loss, however, is not to be measured thus, but it must be measured from the standpoint of the purchase price between him and his grantor, and the plaintiff is entitled to recover from his grantor accordingly. Now, had the plaintiff purchased the paramount title of Mrs. McDaniel to two-thirds of the lot, the amount he paid her, and interest thereon at six per cent, *pro tanto*, within the purchase price and interest received by these defendant grantors in the first instance, would be the measure of his recovery. [Leet v. Gratz, 92 Mo. App. 422.] He did not purchase, however, but on the contrary, he recognized the paramountcy of Mrs. McDaniel's title to two-thirds of the lot and to surrender to it *pro tanto*. Now had the title failed to the entire lot, and plaintiff surrendered to Mrs. McDaniel, she owning the entire title which was paramount, the measure of his recovery would be the pur-

chase price received by the defendant grantors, with six per cent interest thereon. [Lambert v. Estes, 99 Mo. 604; Dickson v. Desire, 23 Mo. 151, 167; Leet v. Gratz, 92 Mo. App. 422.] And it follows, of course, that when he surrendered a part of the lot only to the paramount title, he can recover such part of the purchase price as bears the same ratio to the whole consideration; that the value of the land to which the title has failed bears to the value of the whole premises. [8 Amer. & Eng. Ency. Law (2 Ed.), 174, and cases cited in the note; 3 Washburn on Real Property (6 Ed.), sec. 2410.] And therefore, in this case, the measure of plaintiff's recovery two-thirds of the title having failed, will be two-thirds of the purchase price received by his grantors, with interest.

It is said, however, that no proof was introduced showing the amount of consideration which passed from plaintiff to his grantors for the deed, and indeed, there is no competent proof on this matter, other than the recital in the deed itself, which states a consideration of $100. Now, while it is true the consideration expressed in the deed is not prime facie, against a remote grantor, as was adjudged in Allen v. Kennedy, 91 Mo. 224, there is no doubt but that such recital in the deed is prima-facie evidence between the parties to the instrument, of the amount of the consideration paid. [8 Amer. & Eng. Ency. Law (2 Ed.), 196; Patrick v. Leach, 1 McCreary (U. S.) 250.] This is clearly recognized in Allen v. Kennedy, supra. The recital in the deed, however, is not conclusive even betweeen the immediate parties. The true consideration may be shown by either party for the purpose of increasing or decreasing the damages to be recovered. [Henderson v. Henderson's Excrs., 13 Mo. 151; Guinotte v. Chouteau, 34 Mo. 135; Miller v. McCoy, 50 Mo. 214; 8 Amer. & Eng. Ency. Law (2 Ed), 196-202.]

It is next suggested that the plaintiff's proof *ore tenus* did not only fail to show affirmatively that no

consideration passed from the plaintiff to the defendant, but it appears the consideration passed from the plaintiff to one Burgess,.and by inference, none passed to these defendants, and for that reason nominal damages only can be awarded on the proof made. Of course this matter becomes important only in event it appears affirmatively from the plaintiff's proof there was no consideration passed to the defendants, otherwise the recital of the deed in that behalf is sufficient, with the case in its present posture. Now in view of the suggestion mentioned, it will be necessary to advert to the evidence. Mr. Jones, the plaintiff, whose memory seems to be quite indefinite with respect to the transaction gave evidence tending to prove that one Burgess had originally purchased or contracted to purchase the lot in question from defendants and held a bond for the deed from them therefor; that plaintiff loaned Burgess $150 taking his note. The bond for the deed from defendants to Burgess was assigned and deposited with plaintiff by Burgess as collateral security for the loan evidenced by the note. The note remained unpaid for several years and interest accumulated thereon, amounting to $75 until the total of note and interest amounted in the aggregate to $225, and on July 1, 1892, plaintiff surrendered to Burgess the note, and to some one, (the inference to my mind from the evidence being these defendants) the bond for the deed, and received from the defendants the deed in extinguishment of this $225 indebtedness of Burgess. Plaintiff did not testify that he surrendered the bond to Burgess. On that question he said in reply to the following questions: "Q. When was it that you delivered the bond to Mr. Burgess? A. I never said that I delivered it to Mr. Burgess. I could not tell about that." And as to what the defendants did, the following question and answer is pertinent as tending to prove the defendants received at least the surrender of the plaintiff's rights in the bond by the transaction. "Q.

After that you say that you bought the lot from the Haseltines? A. Well all I can say about that is on the first day of July they took up the bond for the deed and executed to me this deed on the first day of July, 1892. Q. Took up the bond for it? A. They had previously given Burgess the bond for the deed on that lot. Q. Was that the lot you loaned the money on? A. Yes, sir, that was assigned to me as security." The witness said he did not know what Burgess paid the defendants or whether there had ever been a settlement between Burgess and defendants, nor whether defendants ever received any compensation for the lot, and the following question and answer appears, speaking of defendants: "Q. Yet they took up the Burgess Bond and gave you the deed? A. Well, here was this $150 which Burgess had borrowed from me. Yes, sir, and the deed, I don't know how it was settled. They gave me the deed, and that took up that indebtedness." Now it is quite clear to my mind from the foregoing excerpts and the trend of the oral testimony that it does not affirmatively appear the defendants received no consideration for the lot, so as to render the recital in the deed unavailable on that score. It appears, however, the consideration was different from that recited in the deed, which is stated to be $100, and this recital is prima-facie proof the defendants received $100 from some one, as it appears over their signature. Now certainly sufficient consideration was shown aside from the recital in the deed, as moving from the plaintiff to the defendant to support the transaction, on any view of the case, and although a substantial recovery on the covenant would not be supported in the absence of a showing by the recital in the deed, or otherwise that the grantors actually received some consideration and the recovery would be confined, so as not to exceed, *pro tanto,* the amount received, nevertheless there was a sufficent consideration for the deed to support and render valid the transaction if the plaintiff, on account there-

of, was induced by defendants' act and deed, to forego any right he then had, for if one party on the faith of the promise and act of another, abandons or foregoes any right, or assumes any burden or inconvenience, this will amount in law to a sufficient consideration to support the transaction.    [Underwood Typewriter Company v. Century Realty Co., 118 Mo. App. 197.]    Now plaintiff did forego his debt against Burgess amounting in the aggregate to $225, and surrendered defendant's bond, which he held as collateral security.    For these he received the deed from defendants, which the defendants were obligated by their bond to execute and deliver to Burgess, and while the transaction did not operate a novation of plaintiff's debt against Burgess and constitute Burgess the debtor of defendants, it did have the effect of extinguishing it and operated a payment of the note, and interest, $225, owing by Burgess to plaintiff, and thereby rendering defendants liable on their covenants to answer to plaintiff for the actual loss entailed upon him by the breach of the covenant, not exceeding, however, *pro tanto*, the consideration and interest thereon received by defendants (see 8 Amer. & Eng. Ency. Law (2 Ed.), 189, in point and cases cited) and this consideration, I take it, is sufficiently shown by the deed, in the absence of proof showing none was received. [Authorities supra.]    The most that can be made of plaintiff's admissions on this question against himself is that he did not personally pay defendants any consideration therefor, and did not know whether Burgess had paid them for the deed or not.    He did not say none was paid.    In my opinion this evidence cannot overthrow the recital in the deed that the defendant had received $100 as consideration for the lot.    They are bound by this recital until it is overthrown.

I entertain no doubt on the facts in proof that defendants are liable to the plaintiff on account of the breach for the amount of the loss entailed, not exceed-

ing two-thirds of the consideration recited in the deed, with interest, unless the claim is barred by limitation.

2.   The Statute of Limitation pleaded in the answer is not available as a defense, for the reason the cause of action for a substantial recovery did not accrue until March 17, 1903, on which date, plaintiff surrendered to the paramount title which surrender operated a right of substantial recovery in his behalf.   [Chambers v. Smith, 23 Mo. 174; Leet v. Gratz, 124 Mo. App. 394, decided at this term of court; Priest v. Deaver, 22 Mo. App. 276.]   I conclude on the whole case the plaintiff having established; first that he surrendered to the title of Mrs. McDaniel after it was asserted by her; second that such title was paramount; third, that by the recital in his deed from the defendants, it appears defendants had received a consideration of $100 for the lot; he was thereupon entitled to a substantial recovery for two-thirds of the consideration received by the defendants, as shown by the deed, with six per cent interest thereon from the date of its payment and therefore the learned trial judge erred in finding and giving judgment for the defendants on the uncontroverted facts of the case.

For the reasons given I concur with Judge *Bland* in reversing the judgment and remanding the cause.