# CASES

## ARGUED AND DETERMINED

IN

# THE SUPREME COURT

OF

## THE STATE OF MISSOURI,

JANUARY TERM, 1863, AT JEFFERSON CITY.

STATE, *ex rel.* REGISTER OF LANDS, *v.* SECRETARY OF STATE.

*Mandamus.*—Under the act of March 15, 1861, (Sess. Acts 1860–61, p. 37, § 7,) the duty of the secretary of State was merely ministerial, to verify the correctness of the account, and a mandamus will lie to compel him to perform the duty. Bay, J., dissenting.

*Petition for Mandamus.*

*Ryland & Son,* for relator.

BATES, Judge, delivered the opinion of the court.

The General Assembly, by an act on the 15th day of March, 1861, by the first section thereof, required the register of lands, on the first Monday of July, 1862, to advertise for sale, in some newspaper printed at the seat of government, all the lands and town lots returned to his office as forfeited to the State, or unsold, upon which the taxes and costs for the years from 1844 to 1859, inclusive, or for any one or more of said years, remain due and unpaid at the date of the advertise-

State, *ex rel.* Register of Lands, v. Secretary of State.

ment.   The second, third, fourth, fifth and sixth sections prescribed details as to advertising and selling the lands.

The seventh section is as follows:

" The collector and the printer shall receive the same compensation and be paid in the same manner as like services are required to be paid by the laws existing at the time of the rendition of service, and the register of lands shall be paid fifteen cents for each tract of land or town lot certified out for sale under this act; all of which fees shall be, by the register, added as costs to the amount of State taxes, opposite each tract or lot.   The register's fees shall be paid out of the State treasury, upon the production to the auditor of public accounts of the certificate of the secretary of State that such service has been performed."

The register of lands, in July, 1862, presented to the secretary of State an account, in which was stated the number of tracts of land and town lots certified out for sale, as alleged by him, and requested the certificate of the secretary of State that such service had been performed.   The secretary of State refused to give the certificate, and the register applied to this court for a mandamus upon the secretary to compel him to grant the certificate, and a rule was made upon the secretary, Oliver, (which the parties agree is to be regarded as an alternative mandamus,) requiring him to show cause, in this court, at the January term, 1863, why he does not certify the said account, and that the service for which said account is made has been performed.

Oliver shewed cause as follows:

1.  There is no law requiring him to certify the account.

2.  He could not certify that the services had been performed until evidence thereof satisfactory to him had been furnished, and that it was not pretended that such evidence had been produced.

3.  An argument upon the act, to show that it does not require him to give a certificate of the services performed.

4.  Even if the law requires him to certify that the services had been performed, he could not do so until evidence had

State, *ex rel.* Register of Lands, v. Secretary of State.

been produced to him to satisfy his mind that the certificate was true, which had not been done.

5. A repetition of the allegation that evidence was not produced to him.

6. A statement that the account was erroneous in this, " that the complainant charged, in said account, fifteen cents, in a great many cases, for each division and subdivision of an entire and contiguous tract of land belonging to, and assessed to the same person, thereby, in some cases, charging thirty, and in others forty-five, and even sixty cents, for one tract of land assessed to the same person, when, by the law, he was only entitled to charge the sum of fifteen cents therefor."

7. A repetition of the allegation that sufficient evidence was not produced to him that the services had been performed, with an inuendo that it was requisite to give him evidence that the work was correctly performed.

8. A statement that he was and is willing to examine the work, and see if it has been performed, as soon and as fast as the other duties of his office would permit; and if, upon such examination he found that the work had been done, he was willing to make out such certificate as the law directs, but that the complainant insisted that the certificate should be made at once, without such examination, which was refused by him.

9. A statement that the complainant has not had the said delinquent tax list from the year 1844 to 1859 advertised as the law in such cases directs; and a statement that no evidence was furnished him but the statement of the complainant, and a printed list on a strip of paper.

To this return the complainant, Orr, answered—

1. That the law does require the secretary of State to certify that the services were performed.

2. That the complainant did offer to show the defendant, by sufficient testimony, that he had performed the work, which defendant refused to hear.

3. A denial of the soundness of defendant's argument given as the third cause stated in his return.

4. A denial that sufficient evidence had not been given to defendant, with a statement of the character of evidence given and tendered to him.

5. Allegations that he offered to prove by his clerks that the services had been performed, and that he tendered to defendant the privilege of examining the records in his office as much as defendant wished.

6. A denial that he, in any instance, charged more than fifteen cents for any one tract of land certified out by him.

7. An allegation that the defendant refused to hear testimony offered.

8. A denial that he, complainant, insisted that the certificate should be made at once, without examination; and an averment that the defendant refused to hear testimony offered, or to state when he would hear it, or when he would make the certificate.

9. A statement that complainant did have the said delinquent tax list from 1844 to 1859 advertised according to law, and did deliver to defendant a complete printed copy of the same, shewing each tract of land in the State thus advertised, &c.; and that defendant did not deny that it was a true copy, or had been printed, and has not specified in his return in what respect the advertisement was not properly made.

The defendant moved the court to strike out this answer, which motion was regarded as a demurrer, and upon the argument upon it the whole subject was discussed by counsel, and the consent of the parties expressed that the whole matter should be considered and disposed of by the court.

The first question presented by the pleadings, and which lies at the foundation of the whole matter, is, what is the duty of the secretary of State in the premises? The only words of the statute which defines his duty are these: "The register's fees shall be paid out of the State treasury upon the production to the auditor of public accounts of the certificate of the secretary of State that such service has been performed." These words occur in a section which provides

first for the compensation of the collectors and printer for their portions of the work required by the act, and then provides that the register shall be paid fifteen cents for each tract of land or town lot certified out for sale under this act, which fees are to be added to the taxes on each tract of land.

In order to define with any precision what duty is incumbent upon the secretary of State, it is necessary to regard the whole act and its general purpose.

A large number of tracts of land had become forfeited to the State for taxes for many years, the accounts and records of which pertained to the office of the register of lands. The General Assembly directed these lands to be sold in the counties in which they lie, and directed what duties should be done by the register in reference to such sales; and finally, in the last section of the act, directed how the collector, printer and register should be paid for their services, and in this section only, and in this connection only, is any mention made of the secretary of State. It appears, therefore, that the only duty required of him has reference only to the compensation of the register. He is not required to direct, or superintend, or correct the work required of the register. If such duties had been required of him, they would, without doubt, have been declared specifically, and have been required of him contemporaneously with the performance of the work by the register, whereas his only duty is to certify that the services have been performed, and this can only be done after their performance. Any discretion to be exercised in the performance of the duties devolved upon the register is to be exercised by him alone, and the secretary of State has only to certify the amount of work done, so as to verify the register's account that it may be audited by the auditor of public accounts; and, as the amount of the register's compensation depended entirely upon the number of tracts of land and town lots certified out for sale by him, the simple duty of the secretary of State was to ascertain the number of tracts of land so certified out by the register of lands, and grant to him a certificate of the number.

The register of lands is a public officer, authorized by the constitution, whose office is kept at the seat of government, where is also that of the secretary of State, who could have had access to the register's office to examine such records as might be necessary to enable him to ascertain the number of tracts of land certified out by the register.

The similar act of February 27, 1843, was different in its language, in describing what should be certified by the secretary of State, and expressed directly what this act intends by more general terms. That act was as follows:

" The register of lands shall be entitled to fees for his services as follows: for every tract of land or town lot which he shall certify out for sale in the year 1843, thirty-five cents; for every tract of land or town lot certified out after the year 1843, twelve cents.

" The fee herein allowed to the register of lands shall be paid by the State, but before the register shall be allowed any fees, he shall produce to the auditor of public accounts a certificate of the secretary of State, certifying the number of tracts of land and town lots certified out by the register under the provisions of this act." (Laws 1842–3, p. 142, § 32 & 33.)

Considering that the only object to be attained by the certificate of the secretary of State was the verification of the account of the register for the services rendered by him, it would seem that there could be no doubt that the secretary's duty was the same as that required of him for a similar object by the law of 1843.

With this view of the secretary's duty, it is apparent that none of the various matters of law, fact and argument set out in his return to the rule made against him show any legal cause why he should not grant the certificate of the services rendered by the register. If the register has done any part of the work incorrectly, he may be responsible to the State for losses occasioned thereby; but that is no reason why the secretary should withhold his certificate of the amount of service rendered, concerning which only he was to certify,

and not concerning its correctness. His allegation that he was willing to examine the work, and if he found it performed, to certify the fact, is disproved by the fact, that, although nearly six months has elapsed, he has not done so.

Peremptory mandamus will issue. Judge Dryden concurs.

Dissenting opinion, by Judge BAY.

As I cannot concur in the opinion of my brother judges with reference to the application in this case, it is proper that I should assign the reasons for thus dissenting.

The petition alleges (among other things) that by an act of the General Assembly, approved March 15, 1861, " the register of lands was required on the 1st Monday of July, 1862, to advertise for sale, in some newspaper printed at the seat of government, all lands and town lots returned to his office as forfeited to the State, or unsold, for which the taxes and costs for the years from 1844 to 1859 inclusive, or from any one or more of said years, remain due and unpaid at the date of the advertisement. Also, that said register should cause to be printed twenty slips for each county, setting forth the lands and town lots advertised for sale in such county.

That by said act he was further required to place opposite each tract of land and town lot the name of the person to whom it was assessed, and the amount of taxes and costs due the State and county separately for each year, together with fifteen per cent. per annum upon said taxes and costs, to be computed up to the date of the advertisement. That by said act it was further declared that said register should on or before the first Monday of August, 1862, make out a fair copy of all the lands and town lots, subject to sale under said act, in each county separately, and transmit the same to the respective collectors of the proper counties, certified under the seal of his office, together with four copies of the advertisement and the twenty slips aforesaid.

And by said act it was further declared that the register of lands should be paid fifteen cents for each tract of land or town lot certified out for sale under said act, to be added as

costs by the register to the amount of State taxes opposite each tract or lot, and that said fees shall be paid to the register out of the State treasury upon the production to the auditor of public accounts of the certificate of the secretary of State that such services have been performed.

The petitioner then alleges a performance by him of the duties imposed by said act, and that the fees due him for such services amount to twelve thousand and sixty-one dollars and thirty cents. The petitioner further alleges that he offered to prove to the secretary of State by his clerks and other witnesses that he had performed all the services required by said act, which proof the secretary refused to hear; that he then presented to said secretary of State his account in the words and figures following:

" State of Missouri to Sample Orr, Register of Lands, Dr. July 22, 1862—To certifying out for sale under act of the General Assembly, approved March 15, 1861, 99,968 tracts of land and town lots, at 15 cents per tract, $14,995 20.— Cr. By 16,226 tracts of land and town lots, of which a list was made out by J. F. Houston, the former register of lands, during his continuance in office, under and by virtue of the above act, and for which he received the certificate of the secretary of State as required under said act. This work thus made out by said Houston was adopted by me, the present register, and is counted in the above number charged for by me, and the State has a credit for it as being paid to the said Houston, former register of lands, $2,433 90. Balance due me, $12,561 30.—Sample Orr, register of lands."

That he presented said account to said secretary of State on Monday or Tuesday (a day or two before the filing of his petition) and requested him to certify the same in order that he might present it to the auditor of public accounts for a warrant on the State treasury for said amount; but the secretary refused to give him such a certificate, stating at the time that he must examine all the work and all the calculations, and that if one cent was wrong he would not certify; that all lands owned by one man and lying contiguous made one

tract, and that he had not time to make the examination then, and he would not certify until he did make the examination if it took him two years to do it. The petitioner further states that on the day before the filing of this petition he again presented his account to said secretary, together with a copy of the printed advertisement, showing the whole number of tracts and town lots, and showing the manner in which the work had been done by him, and again requested a certificate, which the secretary refused to give; that it is the duty of the secretary of State to certify to the account, and not to the manner nor mode in which the work is done.

The petition then prays that this court will make a rule requiring said Oliver to make said certificate, or show cause, if any he can, why a mandamus shall not be awarded against him commanding and compelling him to certify the said account to be correct, &c.

The answer of the secretary of State to the rule granted substantially declares that the duty required of him is not a ministerial act, but one necessarily involving the exercise on his part of judgment and discretion; that the register produced to him no evidence that all of the work had been done for which he charged the amount set forth in his account, and that he could not therefore in conscience or law certify that the service had been performed.

The respondent further states that the whole of the services for which said complainant's account was made out, was not in fact performed, and that said account was erroneous.

That said complainant in a great many cases charged fifteen cents for each division and subdivision of an entire and contiguous tract of land belonging and assessed to the same individual, thereby in some cases charging thirty, and in others forty-five, and even sixty cents, for a tract of land assessed to one individual, when by law he was only entitled to charge therefor fifteen cents.

The respondent denies that he ever contended that the register should do the work over again, but he does contend that enough evidence must be produced to satisfy his mind

that the services have been rendered and for which the charges are made, and that no such evidence was produced to him. He further states in his answer that the complainant did not advertise the delinquent tax list from 1844 to 1859, as the law in such case directs, and that he never produced to him any sufficient evidence of his having performed the services required, and for which the said account was made out; that the only evidence presented to him by complainant was the mere statement of complainant and a printed list or slip of paper which was in no way verified as correct.

The replication traverses most of the allegations in the answer, and states that he, complainant, did offer to prove by his clerks and others that he had performed the services required by said act. There is one allegation, however, which is not traversed, to wit, the allegation " that the complainant in a great many cases charged fifteen cents for each division and subdivision of an entire and contiguous tract of land belonging and assessed to the same individual, thereby in some cases charging thirty, and in others forty-five, and even sixty cents, for a tract of land assessed to one individual, when by law he was only entitled to charge therefor fifteen cents."

In reply to this the complainant denies that he in any instance charged more than fifteen cents for any one tract of land certified out by him; he charges that the law required him to certify the taxes assessed upon each tract of land separately with the costs upon each tract, and denies that he ever in any instance charged more than fifteen cents upon any one such tract.

The allegation is not that he charged more than fifteen cents upon one tract, but that he divided and subdivided in many instances a tract contiguous and assessed to and belonging to one individual, and charged fifteen cents for each division and subdivision; in other words, that he made each division and subdivision a tract by itself and charged, though it was a separate and distinct tract.

The denial therefore that he charged more than fifteen cents for any one tract is not responsive to a denial of the al-

legations, and according to the rules of pleading the allegation must be taken as confessed.

Having thus stated the issues raised by the pleadings of both law and fact, I shall proceed to discuss the two propositions presented for our consideration.

1. Have we the power to award a peremptory mandamus against the secretary of State as prayed for by the complainant?

2. If we have such power, do the facts in the case warrant its exercise?

In answer to the first proposition, I am clearly of opinion that we are clothed with no such authority.

The rule of law is well settled, that where a purely ministerial act is to be done and a party refuses to undertake it, and there is no other specific remedy, a mandamus will be granted to do the act which is required; that is to say, to do his duty according to the best of his judgment. But when a complainant is against a person who acts in a judicial capacity, or in any capacity which requires the exercise of judgment, deliberation or discretion, the court has no power to direct him how he shall decide, nor to interfere in anywise with his judgment when once exercised.

If I can establish this principle of law to be true, it cuts this case up by the roots, and establishes conclusively a want of power on our part in the premises.

The first case which I shall cite is that of the King v. the Justices of Kent, reported in 14 East. 395.

It was an application for a mandamus by certain journeymen millers made to the court of King's Bench, requesting the court to order the justices of Kent to limit and appoint the wages of millers in said county according to the statute in such case made and provided, and according to a petition presented for that purpose. The justices of Kent refused to entertain the application upon the ground of a want of jurisdiction. The King's Bench awarded a mandamus, and Lord Ellenborough, in delivering the opinion of the court, said:

" We do not, however, by granting this mandamus, at all

interfere with the exercise of that discretion which the legislature meant to confide to the justices of the peace in session. We only say they have a discretion to exercise, and therefore they must hear the application ; but, having heard it, it rests entirely with them to act or not upon it, as they think fit."

It is unnecessary to cite other English authorities, for they are all, without an exception, to the same import.

In the case of the United States v. Lawrence, 3 Dal. 42, it was determined by the Supreme Court of the United States unanimously, after a full argument, that although they might command an inferior judge to proceed to judgment, yet they had no power to compel him to decide according to the dictates of any judgment but his own.

The case of Griffith v. Cochran, 5 Binney, 87, was an application for a mandamus against the secretary of the land office of Pennsylvania, to compel him to issue patents for certain lands bought and paid for by the complainant.

The act creating the land office required that the secretary should make all calculations of purchase money and interest on lands sold or that should be sold by the State, and direct the payment of the money, with the price of the warrants, into the State treasury.

The Supreme Court of Pennsylvania made a rule upon the secretary to show cause, &c., and in reply to such rule the secretary stated that he was ready to perform his duty, but a dispute existed between him and the applicant with respect to the mode of calculating the fees, interest money, &c., and he claimed the right to make the calculations according to his own judgment.

The mandamus was refused, and in delivering the opinion of the court C. J. Tilghman said : " Where a ministerial act is to be done, and there is no other specific remedy, a *mandamus* will be granted to do the act which is required ; but when the complaint is against a person who acts in a judicial or deliberative capacity, he may be ordered by a mandamus to proceed to do his duty by deciding and acting according

to the best of his judgment, but the court will not direct in what manner to decide."

The Commonwealth of Pennsylvania v. The Judges of the Court of Common Pleas, 3 Binney, 273, is to the same effect.

The Supreme Court of New York in Hull v. The Supervisors of the County of Oneida, 19 Johnson, 259, fully recognizes the distinction contended for by Lord Ellenborough in King v. The Justices of Kent, 14 East.

J. Platt, in delivering the opinion of the court, said : " The distinction recognized by us is, that where the inferior tribunal has a discretion and proceeds to exercise it, we have no jurisdiction to control that discretion by *mandamus*."

In Page, second auditor, v. Hardin, 8 B. Monroe, 654, the Supreme Court of Kentucky held that a *mandamus* would lie against the auditor for refusing to issue his warrant for the salary due to an officer. They held that the auditor had no discretion in such cases, and he was bound to know the salary of the officer as fixed by law, and when it became due ; but they expressly ignored the idea that it would lie against an officer whose duty involved judgment and discretion.

But it is unnecessary to multiply authorities upon a proposition which is now universally admitted to be a fixed and settled principle of law. Let us then apply this principle to the case at bar.

It is not contended that the secretary of State has refused to undertake the duty enjoined upon him, but that he has refused to do it in a particular manner ; that is to say, that he has refused to certify to the complainant's account, and refused to hear the testimony of complainant's clerks as to the fact that the register had performed the duties enjoined by law.

In the opinion delivered by my brother judges they say : " Any discretion to be exercised in the performance of the duties devolved upon the register, is to be exercised by him alone, and the secretary of State has only to certify the amount of work done so as to verify the register's account, that it may be audited by the auditor of public accounts ; and as the amount of the register's compensation depended en-

tirely upon the number of tracts of land and town lots certified out for sale by him, the simple duty of the secretary of State was to ascertain the number of tracts of land so certified out by the register of lands, and grant to him a certificate of the number."

If the conclusion reached by a majority of the court is correct, then I confess my inability to comprehend the meaning of the act, or the object of the Legislature in passing it.

If the secretary has nothing to do but to count the tracts and certify to the number, then the Legislature committed the unpardonable folly of calling upon a high executive officer to perform a duty which a school-boy ten years old could have performed with equal judgment and correctness. Why was the secretary of State interposed between the register and auditor? Why not have left it to the auditor to count up the tracts, which he could have done by one of his clerks with little trouble?

Some reason should be assigned for imposing upon an officer a duty outside of his regular official duties.

Again, if the interpretation placed upon the act by a majority of the court is correct, the treasury is entirely at the mercy of the register. He may certify out half of the lands in the State, and make a bill against the State that will absorb the entire revenue for the next ten years. Surely the act cannot admit of any such interpretation; neither its phraseology or spirit warrant such a construction. It does not say, as my brother judges seem to suppose, that the secretary is to certify merely to the number of tracts. It provides that the register's fees shall be paid out of the State treasury upon the production to the auditor of public accounts of the certificate of the secretary of State *that such service has been performed;* what service? Why, the service enjoined by the act upon the register. He is not required to certify to the account, but simply to certify that the register has performed the duties required by the act, and that he has performed them in accordance with the act.

Now, how can he certify to this unless he knows what has

been done by the register and the manner in which it has been done?

The act imposes many duties upon the register. He is to advertise for sale on the first Monday of July, 1862, in a newspaper printed at the seat of government, all lands and town lots forfeited to the State or unsold upon which taxes remain due for certain years. He is then to have printed twenty slips for each county, setting forth the lands and town lots advertised for sale in such county. He must then place opposite each tract and lot the name of the person to whom it is assessed and the amount of taxes and costs due the State and county separately for each year, together with fifteen per cent. per annum added.

These and many other things are required of him by the act, and now we are gravely told that the secretary of State can certify that all these have been done without any other knowledge than that which can be derived from the mere adding up of the tracts and ascertaining how many are contained in the list which the register may hand him. In other words, he is to certify that the services have been performed whether he knows it or not. He cannot know it except by a careful examination, by the exercise of judgment, thought, calculation, deliberation, and discretion. If he makes the certificate without the necessary examination, he commits a fraud upon the State and proves recreant to the trust confided to him.

If he refuses (though no evidence may be furnished him that the services have been performed), he subjects himself to the mandate of this court, and to imprisonment for contempt. This court has awarded a peremptory mandamus to do what? Why, to compel the secretary of State to certify *that the register* has performed the service required by the act, for the act contemplates no other form of certificate.

The secretary tells us that the register, as far as he has been able to make the examination, has not performed the service, and yet we require him to certify to a fact which he tells us is false.

In my humble judgment this court is clothed with no such power. The duty enjoined upon the secretary of State is not merely ministerial, but is to a great extent judicial, and involves the exercise of judgment and discretion. He must be the judge of what evidence will satisfy his mind that the services have been performed. He is not required to take the opinions of the register's clerks, or of any other person; for the Legislature relied upon his judgment and opinion, and not upon the opinions and judgment of subordinates in the register's office.

As the matter, then, confided to the secretary of State is one of discretion, it is clear to my mind that we have no power to interfere with that discretion.

But even if the power existed, the facts do not in my opinion warrant its exercise. The account was presented to the secretary only one day before the filing of the petition, and, so far as the record shows, he had no time to make the necessary examination. He was certainly entitled to a reasonable time.

In view, then, of all the facts of this case, I feel compelled to dissent from the opinion of my brother judges.