## SCHNELLE & QUERL LUMBER CO. *v.* BARLOW.

*(Circuit Court, S. D. New York.   May 8, 1888.)*

1. DEEDS—STATUTORY CONSTRUCTION—"GRANT, BARGAIN, AND SELL."
   Under 1 Rev. St. Mo. 1879, c. 20, § 675, p. 110, as construed by the supreme court of that state, the words "grant, bargain, and sell," used in a conveyance in which an "estate of inheritance in fee-simple is limited," amount to a covenant of seizin of the estate so limited, and the covenant runs with the land.

2. COVENANTS—SEIZIN—TITLE BY JUDGMENT IN EJECTMENT.
   In Missouri ejectment is a mere possessory action and a judgment therein confers no title upon the party in whose favor it is given.   It is no defense, therefore, to an action in the United States circuit court in New York, by the grantee of land in Missouri, to recover damages for breach of covenant of seizin, that the covenantor has succeeded to the rights of the prevailing party in ejectment, and has duly conveyed them to the plaintiff, in the absence of other proof of title in such prevailing party.

3. SAME—PURCHASE OF PARAMOUNT TITLE.
   A covenantee, in Missouri, under a covenant of seizin is not bound to wait for actual dispossession, but may at once, upon the hostile assertion of a paramount right or title, pay off or extinguish the right by purchase; and his measure of damages is the reasonable sum paid for such title.

4. SAME.
   The life-tenant of land in Missouri compromised litigation with B., who claimed an interest in it, by taking from him a deed of nineteen-thirtieths, and giving him in turn a conveyance of the remaining eleven-thirtieths.   Upon her death intestate, the remainder-men in fee, who were also her children, set up title to the land conveyed to B., and he filed bill to remove cloud. · The bill was dismissed, and the dismissal was affirmed by two appellate courts, on the ground that the children were not estopped from asserting title to the land B. had got by reason of the fact that they had succeeded as heirs to the land he had given their mother in exchange.   S., who had bought B.'s land, and been compelled to purchase the interest of the heirs, then sued B. on his covenant of seizin in the United States circuit court in New York.   *Held,* that neither the plaintiff nor the defendant would have had a valid defense in an action of ejectment, in Missouri, at the suit of the remainder-men.

At Law.

*Charles C. Burlingham* and *Joseph A. Shoudy,* for plaintiff.

*Wm. D. Shipman,* for defendant.

SHIPMAN, J.   This is an action at law, in which a jury trial was waived, by written stipulation duly signed by the parties, and the case was tried by the court.   The action was brought to recover the damages which were alleged to have been sustained by the plaintiff by reason of the breach of the covenant of seizin in the deed of the defendant and his wife of a lot of land in St. Louis, Mo., to Lesley Garnett.   The facts which, upon such trial, were proved and are found by the court to be true, are as follows: The land in question is property described in the complaint, and is situated on the south-east corner of Eighth and Mullanphy streets in said St. Louis, having a front of 36 feet 3 inches on Eighth street, and a depth of 125 feet on Mullanphy street.   In the partition of the estate of John Mullanphy, in April, 1842, the partition proceedings having been instituted in the month of August, 1841, said lot was set off and aparted to his daughter, Mrs. Ann Biddle, who died in January, 1846,

having devised an undivided one-fifth interest in a tract of land, including said lot, to the use of her sister, Octavia Delaney, then wife of Dennis Delaney, "for and during her life, and from and after her death to the use of the heirs of her body living at the time of her death, and for default of such issue then to the use of my own right heirs, forever." Mrs. Delaney, after the death of her said husband, married Henry Boyce, and upon the partition of Mrs. Biddle's estate, in 1854, the said lot was allotted to two trustees, appointed under an antenuptial settlement of the said Henry Boyce and wife, "to the use of Octavia Boyce (wife of Henry Boyce) for and during her life, and from and after her death to the use of the heirs of her body living at the time of her death, and for default of such issue then to the use of the right heirs of Ann Biddle deceased, forever." Mrs. Boyce died on November 12, 1876, leaving three children, John O F. Delaney, Jane Lindsay, wife of Andrew J. Lindsay, and Mary E. Boyce. On April 15, 1867, Mrs. Boyce and one of her trustees, her said husband being in life, but not joining in said conveyance, executed a deed of said lot in fee, with general and special covenants, to the defendant, said deed purporting to be an absolute conveyance thereof. On March 18, 1872, the defendant and his wife conveyed said lot in fee-simple to Lesley Garnett. The words of conveyance which were used in said deed were "grant, bargain, and sell."

The statute of Missouri, in existence at the date and execution of said deed, and ever since the existing statute in said state, is as follows:

"The words 'grant, bargain, and sell' in all conveyances in which any estate of inheritance in fee-simple is limited, shall, unless restrained by expressed terms contained in such conveyances, be construed to be the following expressed covenants on the part of the grantor, for himself and his heirs, to the grantee, his heirs and assigns: *First*, that the grantor was, at the time of the execution of such conveyance, seized of an indefeasible estate in fee-simple, in the real estate thereby granted; *second*, that such real estate was, at the time of the execution of such conveyance, free from all incumbrances done or suffered by the grantor or any person under whom he claims; *third*, for further assurances for such real estate to be made by the grantor and his heirs and to the grantee and his heirs and assigns; and may be sued upon in the same manner as if such covenants were expressly inserted in the conveyance." 1 Rev. St. Mo. 1879, p. 110.

The settled construction of this statutory covenant by the highest court of Missouri, as first declared in *Dickson* v. *Desire*, 23 Mo. 151, and substantially affirmed in *Magwire* v. *Riggin*, 44 Mo. 512; *Jones* v. *Whitsett*, 79 Mo. 191, and *Allen* v. *Kennedy*, 91 Mo. 324, 2 S. W. Rep. 142, is, as stated in *Magwire* v. *Riggin*, that the words "grant, bargain, and sell" are a covenant that runs with the land, of indemnity, continuing to successive grantees, and inuring to the one upon whom the loss falls." A contrary construction had been originally announced by the same court in *Collier* v. *Gamble*, 10 Mo. 467.

Said Garnett and wife conveyed the said lot in fee-simple to Charles F. Querl, as trustee, and subsequently, on August 8, 1884, the title of said Garnett and wife became vested in the plaintiff, which immediately entered into and still continues in possession of said land. On March 12,

1886, and after the termination of the suit of *Barlow* v. *Delaney*, herein-after mentioned, the said heirs of the body of Mrs. Boyce caused to be served upon the tenant of the plaintiff a notice demanding the surrender of said lot, and notifiing the tenant to pay no rent but to them.   The plaintiff having examined its title to the said premises, became satisfied that it had none, and, being threatened by the said heirs with a suit in ejectment, paid to them, on April 15, 1886, the sum of $2,537.50 for said land, which was a reasonable and moderate price therefor, and there-upon received a deed from said heirs, which conveyed to it all their right, title, and interest in said land.   On August 8, 1846, Norman Cut-ter commenced in the proper court in St. Louis an action of trespass and ejectment against William Waddingham, demanding the possession of a large tract of land claimed by the heirs of John Mullanphy as a part of his estate, of which tract the lot in question was a part, and damages for the ejection of the plaintiff therefrom.   Waddingham was the tenant in possession.   The living heirs and representatives of John Mullanphy were made party defendants.   Mrs. Biddle, who had theretofore died, was not a party.   Mrs. Boyce was a party; her children were not parties. The litigation[1] continued till February 4, 1865, when a verdict was ren-dered in favor of the plaintiff for the possession of eleven undivided thir-tieths of the whole tract, and damages of $27,500 for the trespass and ejectment and withholding possession and a monthly value of $192.50 for any subsequent possession.   An appeal was taken to the supreme court of Missouri, but was not prosecuted, and was dismissed by the ap-pellants in December, 1868.   On June 5, 1852, the said Cutter sold his interest in nine twenty-fourths of the land described in the declaration in said suit to Henry D. Bacon, and on February 15, 1854, conveyed the remainder of said tract to said Bacon and Daniel D. Page; and said Page and Bacon, by deed dated September 23, 1857, conveyed the whole tract to the defendant for $125,000.   In 1866, said Octavia Boyce, and the defendant entered into an agreement by which they agreed for the purposes of settling said litigation, that the defendant was entitled to twelve-thirtieths of all parts of said tract of land to which the said Boyce derived title under John or Bryan Mullanphy or Ann Biddle, or which had been theretofore set off to her in partition, and that she was entitled to eighteen-thirtieths thereof, and that partition should be made of said interest.   The result was a partition and conveyances between Mrs. Boyce and the defendant of the portion of this tract of land which had been al-lotted to her.   Certain of the lots which he conveyed to her have de-scended to her said children which they still hold.   He also indemnified Mrs. Boyce against any liability under said Cutter judgment.   In part fulfillment of this agreement, she made the conveyance of the lot in ques-tion which has been heretofore mentioned.   The twelve-thirtieths was inserted by mistake instead of eleven-thirtieths.

In the latter part of 1881, it came to the knowledge of the defendant that the children of Mrs. Boyce were claiming title to the two lots con-

[1] See, 22 Mo. 206, 33 Mo. 269.

veyed to him by their mother, of which she had only a life-estate under the will of Mrs. Biddle. He thereupon instituted a suit in equity before the circuit court for the city of St. Louis against said children, in which he averred that he had recently learned and believed it to be true, and so stated, that the said Boyce had only a life-estate in said two pieces of land, and that upon her death, the same went in fee-simple absolute to her children, and that they still owned and possessed all the property which he had conveyed to their mother in exchange for said land, and had inherited from her other realty to the value of $300,000, and that their claim was a cloud upon the title of said two pieces, and praying that they be enjoined from claiming any interest therein, and that the title to the same be diverted from them and vested in him, and for other proper relief. Said circuit court sustained a demurrer to said bill, and entered judgment for the defendants. The St. Louis court of appeals affirmed the judgment upon the following grounds: "(1) A married woman cannot convey real estate without the joinder of her husband; (2) a married woman who owns a life-estate in land, cannot (under the statute of Missouri) execute a valid general warranty deed of the fee; (3) a bill to enforce a deed of the fee of the land conveyed by the owner of the life-estate is without equity as against the remainder-men who are also the heirs of the owner of the life-estate." *Barlow* v. *Delaney*, 13 Mo. App. 591. Upon appeal to the supreme court of Missouri, the judgment of the court of appeals was affirmed, upon the ground that, conceding that Mrs. Boyce had a right to convey, and that her covenants were obligatory upon her, they do not estop her children from asserting their title to the lots in controversy. The court said:

"It is urged, that it would be inequitable to permit defendants to hold the lots of land conveyed by plaintiff, and also recover the lots in controversy, but if they should recover those lots, and the covenants in Mrs. Boyce's deed are binding upon her children, then, to the extent of the estate they inherited from her, plaintiff will have his action on the covenants. If they were of no binding force, either upon her or her heirs, plaintiff certainly has no legal demand against them, which can be enforced against those lots. He may have an equitable right to have the lots conveyed by him charged with a lien for the unpaid purchase price, which would be the value of the lots conveyed by Mrs. Boyce, at the time of that conveyance; but, in no event, has he the right to have their title in the lots in question vested in him." 86 Mo. 587, 588.

The conclusions of law, upon the foregoing facts are as follows:

1. The covenant of seizin of an indefeasible estate in fee-simple, which was contained in the defendant's deed to Garnett, runs with the land.

"Since the ordinary administration of the law is carried on by the state courts, it necessarily happens that by the course of their decisions certain rules are established which become rules of property and action in the state, and have all the effect of law, and which it would be wrong to disturb. This is especially true with regard to the law of real estate, and the construction of state constitutions and statutes. Such established rules are always regarded by the federal courts no less than by the state courts themselves, as authoritative declarations of what the law is." *Burgess* v. *Seligman*, 107 U. S. 20,

2 Sup. Ct. Rep. 10; *Chicago City* v. *Robbins*, 2 Black, 418; *Townsend* v. *Todd*, 91 U. S. 452.

2. According to the evidence, the defendant was never seized of an indefeasible estate in fee-simple in the lot which he conveyed to Garnett. He does not claim that he had such a title, except as to eleven-thirtieths thereof. As to nineteen-thirtieths which he supposed he obtained by the deed of Mrs. Boyce, it is conceded, especially by the suit of *Barlow* v. *Delaney*, that the legal fee of that portion was never conveyed to the defendant. It is manifest that Mrs. Boyce, who derived all her title from the will of Mrs. Biddle, had only a life-estate. As to the eleven-thirtieths, the defendant relies upon the judgment in the Cutter ejectment suit. The conveyances to Cutter, if any ever existed, are not in evidence. His suit was based upon his right of possession. The record does not show that any other right was in issue. No testimony was offered, outside of the record, to show that any other question was actually in issue; and the Missouri authorities are abundant to the effect that, under the statutes of that state, ejectment is a possessory action, and that a judgment therein confers no title upon the party in whose favor it is given, and is not a bar to a subsequent suit in regard to the same land between the same parties, while it may be evidence in such a suit. *Kimmel* v. *Benna*, 70 Mo. 65; *Ekey* v. *Inge*, 87 Mo. 493; *Ewing* v. *Vannewitz*, 8 Mo. App. 602; *Hogan* v. *Smith*, 11 Mo. App. 314. The statute in the revision of 1855, that a judgment in ejectment, except of nonsuit, should be a bar to any other action between the same parties, and upon which the supreme court in *Miles* v. *Caldwell*, 2 Wall. 35, favorably commented, was repealed in 1857. Furthermore, the Boyce heirs were not parties or privies to the Cutter ejectment. It is true that their mother, who had a life-estate in the land, was a party, but they derived their title to the lot in question from Mrs. Biddle, and it seems that a judgment to which the tenant for life is a party is not evidence for or against a reversioner, who was not a party, "because the reversioner does not claim through the tenant for life, but enjoys an independent title." 2 Tayl. Ev. 1356; 1 Greenl. Ev. § 536; Bull. N. P. 232.

3. Upon the testimony in this case, neither the plaintiff nor the defendant would have had a valid defense in an action of ejectment, in Missouri, at the suit of the Boyce heirs. The defendant truly says that, "when the grantee surrenders to the paramount title, he must show that it was a valid and subsisting one, capable of being enforced, and was actually asserted, or he can recover only nominal damages." *Morgan* v. *Railroad Co.*, 63 Mo. 129. And upon this point, the defendant insists —*First*, that there is no proof that the Boyce heirs had a paramount title from a party in peaceable possession; and, *second*, that, it being shown that he had paid the mother of the Boyce children for the fee in this lot by a deed of land which they inherited and still hold, an equity arose against the assertion of their title to this lot of which they were out of possession, or an equity existed against their taking possession, which a Missouri court would have enforced if they had brought an action of ejectment, the statutes of that state permitting both legal and equitable

defenses in ejectment. As to the first point, as has already been said, the legal title of the Boyce children to nineteen-thirtieths is undisputed, and the admissions in the complaint of Barlow against Delaney sufficiently establish, as against Mr. Barlow, their legal title to the eleven-thirtieths. The second is the defendant's strong point, and he earnestly insists, it being admitted that the Boyce heirs have inherited from their mother, and now own the land which was conveyed to her in consideration of her conveyance of the fee of the lot in question, that a Missouri court would in an action of ejectment by them, prevent their obtaining possession until the equities against the enforcement of their legal title were satisfied or removed. This was, in substance, the question which was before the Missouri courts in *Barlow* v. *Delaney*. The demurrer admitted the facts which were alleged in regard to the inequitable conduct of the Boyce heirs, and the bill, after its statement of the grounds of the estoppel, prayed, *inter alia*, for an injunction against them from claiming any interest, title, or estate to said lots, and for any further proper relief. Two appellate courts dismissed the bill; the last court upon the express ground that the children were not estopped from asserting their title to the land in controversy, but that the plaintiff would have his action upon the covenants if the children were bound thereby and recovered the lots, and if the covenants were not of binding force, that the plaintiff had no legal demand against the children which could be enforced upon these lots, but suggested that he might "have an equitable right to have the lots conveyed by him, charged with a lien for the unpaid purchase price." Any speculation upon what the Missouri court could do seems to be useless in view of what the highest court in the state has done by its refusal to prevent the Boyce heirs from making claim to the land in controversy. It has virtually decided that Mr. Barlow has no equities therein which it will recognize.

4. The plaintiff was justified in his purchase of the paramount title without waiting for actual dispossession, and the measure of his damage is the reasonable sum which he paid for a good title.

"The covenantee is not bound to wait for actual dispossession, but may, after such assertion," (the hostile assertion of a paramount right or title by suit or otherwise) "pay off or extinguish the right by purchase; and his measure of damages will be the reasonable value of the right so discharged or extinguished by him." *Ward* v. *Ashbrook*, 78 Mo. 517; *Hall* v. *Bray*, 51 Mo. 288.

The plaintiff is entitled to judgment in his favor for $2,537.50, with interest from April 15, 1886, and costs.