STATE EX REL. R. T. DANIEL ET AL., RESPONDENT, v. CLYDE TORREY, ETC., APPELLANT.—33 S. W. (2d) 130.

Kansas City Court of Appeals. November 3, 1930.

*Ray Maybe* and *Clare Magee* for respondent.

*Thomas B. Davis* and *P. M. Marr* for appellant.

BOYER, C.—This is a proceeding by mandamus instituted in the circuit court of Putnam county, to require a township clerk to attest the signature of the president of the board of directors of Sherman township on a warrant issued by said board to pay a claim allowed by it. It appears that Putnam county had adopted township organization. The relators are the members of the board of directors of Sherman township, and Park & Allison, payees named in the warrant. Respondent is the township clerk.

The petition alleges, *inter alia,* the character of the relators who are members of the board, and that respondent is the clerk of said board; that on the first day of May, 1929, the township was indebted to Park & Allison in the sum of $823.81, due them as contractors for work and labor on the roads of said township; that the claim of Park & Allison was duly allowed by the board and a warrant in the sum due them was issued by said board, duly signed by the president, whereupon it became the duty of the clerk of the board to attest the signature of the president; that said warrant was duly presented to the clerk for the purpose of the attestation of the signature to the warrant, but that said clerk refused and still refuses to attest the signature in accordance with his duty under the law; that relators, who are the members of the board, are interested in making improvements for the good of the township; that the action of the clerk would tend to destroy the credit of the township and subject the board to suits at law and incur great trouble and expense in conducting the affairs of the township; that plaintiffs, Park & Allison, are interested in the collection of money due them for work and labor performed; that plaintiffs have no adequate remedy at law and pray for an alternative writ requiring the said clerk to attest the signature of the president of the board of directors on said warrant or show cause.

The warrant referred to is attached to the petition and is as follows:

"$823.81 "Township Warrant.

"State of Missouri,
"County of Putnam.
"Trustee Sherman Township.

"Pay to Park & Allison or order Eight Hundred Twenty-Three & 81/100 Dollars, out of the moneys in the Treasury belonging to the Dis. No. 1-2 & 4 fund for Labor on Road.

"By order Township Board, this 1st day of May, 1929.

"WM. CLARK, President.

"No. ............„..... Attest: ...................:.., Clerk."

By agreement, the petition was considered as the alternative writ in the cause and the respondent, who is the appellant here, filed his return in which, among. other allegations, he specifically denies that the township. was ever lawfully indebted to Park & Allison; that they were never lawfully employed, and that no lawful contract had ever been entered into by the board with them; and specifically denies that the board of directors ever duly allowed the claim of Park & Allison, and that no lawful warrant was ever issued as provided by law for the payment of said sum; and denies that it ever became his duty as clerk of said board to attest the signature of the president to the alleged warrant, and states that said alleged warrant was never presented to him for signature prior to its delivery to the said Park & Allison; that said Park & Allison have never at any time filed any claim with the township board, verified by affidavit as the law requires; that the alleged warrant for said alleged debt was unlawfully issued and was by law prohibited, and that defendant should not be compelled to sign a warrant which the board had no authority to issue; that at the time of the issuance of the alleged warrant the township board, in violation of the statute, did not meet at the office of the clerk, but met at some other place in the township, and that the purported issuance of said warrant in violation of said law was illegal and void; that no demand was ever made on him by the township board to attest the signature of the president to the warrant, and states that said alleged warrant was presented to him by Park & Allison after its delivery to them by the board, and that any demand that might have been made was made by Park & Allison and not by the township board. The return contained other allegations, by way of defense, which are not now material because not pursued upon the trial of the case and are not in question on this appeal. Relators denied the new matter set up in the return.

After hearing the evidence the trial judge found the issues in favor of relators, and found that defendant had not shown any just cause why a peremptory writ of mandamus should not issue. Whereupon it was ordered that said writ issue to respondent directing him to attest the signature of William Clark, president of the board of directors of Sherman township, Putnam county, Missouri, on the warrant in issue, and that he pay cost. An appeal was duly taken and allowed.

In the record we find evidence of the following: That Ira Berry and William Clark were the elected members of the township board, and R. T. Daniel was township trustee and member of the board; that William Clark was president; that Clyde Torrey was township clerk, and clerk of the township board of directors at all times in question; that Park & Allison were contractors who by arrangement with the board, but without a written contract, graded township roads in 1927, and received payment therefor. A similar arrangement was made with the contractors for the year 1928. They finished their work in August of that year and at the November meeting of the board their bill for services was presented for allowance. On November 19, 1928, the board requested the clerk to issue a warrant for the claim of Park & Allison. The clerk refused so to do and as reason therefor said: "I told them I wouldn't issue the warrant until the damage was paid they did on the road, tearing up tubes and graders;" and he also said: "There was no funds in the treasury to pay them, and they asked me to write no funds on the back of the warrants before that." And again, he says: "Because they tore up the tubes and they asked me to write no funds on the back of warrants."

It is further shown by the testimony of the clerk as to whether there were funds to draw on at a later time when he was requested to attest the signature. He said: "There wouldn't been if they paid the ones I issued at the March meeting, they claimed I hadn't signed them and I had; I asked the board to sign them, and the warrants went to the board members and I suppose they cancelled them warrants; the warrants was all issued on the 16th day of March, and they refused to sign the warrant so the other boys could get their pay."

The regular meeting place of the board had been for many years at the village of St. John near the center of the township; the official business of the board was transacted at this place. Some time after the controversy arose between the clerk and the board, the clerk notified the board that thereafter his office would be at his home located in the southeast corner of the township. There is evidence that he refused to attend meetings of the board held at St. John, and that at one time he notified the members of the board to meet at his home. Thereafter the members of the board attempted to hold a meeting at his house and he refused to meet them. The board continued its meetings at St. John and on the first day of May, 1929, by a minute of record, the three members of the board, in the absence of the clerk, ordered the warrant in question to be issued to Park & Allison. The warrant was drawn by one of the members of the board, signed by the president, and delivered to Park & Allison who were unable to procure the attestation of the clerk.

The clerk testified that no member of the board requested him to attest the warrant until after suit was brought. The clerk also testified that Park & Allison had filed a bill with him, but for a less amount than that shown in the warrant, and that he had not seen any verified statement of the account of the contractors that was presented to the board.

The evidence further shows that the clerk was present when Park & Allison first made their claim; that the board passed on the bill and requested the clerk to draw the warrant; that the clerk refused, and thereafter would not attend any meetings, giving as his reason that he wanted the board to meet at his home; that the board called a meeting at the clerk's house and he refused to meet them and said he didn't have time; that there was no written contract between the board and the contractors, but they agreed upon what the board would pay and what the contractors would do the work for; that all the members of the board and the clerk were present; that at the time the warrant was issued a written verified statement of the account of Park & Allison was before the board and had been presented to the board by them in person. The claim was not filed with the clerk because the clerk never met with the board and they had no chance; that the board got the sworn statement of the account in April, and that the warrant was written in May; that the sworn statement was brought to the board before the regular meeting in April. One of the members of the board, when asked why the warrant was not issued at the regular April meeting when the sworn statement was presented, answered: "We thought maybe we could get him to meet you know and wanted to avoid all trouble, didn't want to bring no suit, we wanted to see if we could get him to sign it and meet at his place to avoid having trouble."

The contractors were employed the same way in 1927, and the clerk wrote a warrant to pay them for that work. Other members of the board testified that a verified statement of the account of Park & Allison was before the board at the time the warrant was ordered; that the method of employment usually pursued by the board was to talk over the subject, agree what was to be done, and "okey" that at a meeting; that this was the way that Park & Allison were employed. It does not appear that the clerk of the board made any minutes or record of the action of the board in employing Park & Allison.

## OPINION.

Appellant makes 7 numerical points. Some of them are repetitions, and the matters alleged may be classified and fully covered by two assignments. (1) That the writ should not have issued because there was no demand made upon the clerk to sign the warrant before

the institution of the action. (2) The warrant is illegal for reasons stated in the return, which fact is a proper defense.

On the question of demand we observe: That the evidence in this case is not only sufficient, but abundant to show the futility of any other or further demand than that already made upon the clerk. The clerk positively refused to obey the order of the board to draw the warrant in question, and sought to substitute his judgment for that of the board in reference to claims which should be paid. He failed and refused to attend meetings of the board after repeated efforts on the part of the members of the board to obtain his presence for the transaction of the business in hand. When he declined to draw the warrant ordered by the board, he is effect declined and refused the performance of any other or further act incumbent upon him. The record is replete with evidence reflecting the fact that the clerk had abandoned his post of duty and had determined upon a course of obstinate non-compliance with the orders of the board. Any further request would have been utterly useless and the law does not require the performance of a futile act. Further, the evidence and the return justify the inference, if they do not positively so show, that after the board delivered the warrant the claimants made efforts to have the clerk perform his duty—that is to attest the signature of the president of the board.

The situation in this case does not fall within the rule that mandamus is never granted in anticipated omission of a duty. The omission occurred before the institution of the proceeding, the purpose of which is to require the performance of a duty long since abandoned. The rule that there must be a previous demand and refusal to perform before mandamus will lie is not an inflexible or invariable rule, but is subject to many exceptions. We quote from 18 R. C. L. page 123, section 37:

"According to the better view where the duty sought to be enforced is one owing to the public generally, no demand for performance is requisite to place the respondent in default as a prerequisite to the application for mandamus to compel the performance of the duty; in such cases the law itself stands in lieu of a demand and the omission to perform the required duty in place of a refusal; . . . As the rule which requires a demand to be made before application to the court for a writ of mandamus is founded upon the reason that it is unjust that the defendant should be subjected to the payment of costs for a failure of some duty which he was willing to perform, had he been requested to do so, it seems that in all cases even where the proceedings are instituted by a private individual as relator a positive demand and refusal may be dispensed with when the course of conduct of the defendant clearly shows a manifest intention not to perform the public duty."

There is no merit in the point made.

Appellant insists that the warrant was illegal because the payee had no lawful claim for work and labor in the absence of a written contract, and that no proper record was made of the employment, and that there is no competent evidence of the filing of a verified statement of the claim with the board before the claim was allowed. The trend of the argument is to the effect that inasmuch as Park & Allison could not have enforced the collection of their demand by suit at law, if defended upon the ground of no contract, that the clerk had the right and power to question all matters that may be asserted as a defense against such claim and to decline the attestation of the warrant. The contention is unsound. The duties of respondent as clerk of the board were purely ministerial as shown by the statutes applicable to his functions as clerk of the board of directors. He has no power or duty to perform in reference to the allowance of a claim against the township. By section 13207, Revised Statutes 1919, he is created clerk of the board of directors and is required to keep a true and correct record of all official acts and proceedings of said board. From the evidence it is apparent that he neglected and failed to keep true and correct records or there would have been such a record showing the employment of the contractors in this case. The clerk has no power to pass upon claims or to question their validity. Section 13214, Revised Statutes 1919, expressly confers upon the board of directors "the power to determine the legality or illegality of any claim or account against the township, and to reject said claim, or any part thereof, as to them appears just and proper." And the section further provides that no claim shall be allowed "until the claimant makes out a statement, verified by affidavit to the amount and nature of his claim." Section 13219, Revised Statutes 1919, provides: "When any claim or account, or any part thereof, shall be allowed by the township board of directors, they shall draw an order upon the township trustee in favor of the claimant for the amount so allowed—said order to be signed by the president of said board, and attested by the township clerk and delivered to said claimant." Section 13204, Revised Statutes 1919, provides: "The township trustee and ex officio treasurer shall not pay out any moneys belonging to the township for any purpose whatever, except upon the order of the township board of directors, signed by the chairman of said board and attested by the township clerk."

In the payment of claims against the township, it is apparent that the clerk has no function to perform other than the clerical act of recording the transactions of the board and to attest the warrants drawn in payment of claims. It cannot be said that the clerk may make himself a party to the allowance and payment of demands,

which function, duty, and responsibility rests exclusively with the board of directors. We do not see that he can go behind the warrant to question its legal basis. If so, he could block or displace the judgment of the board merely by caprice. The clerk is not the Pooh-Bah of the township—he is merely a clerk. When the board allowed the claim, ordered the warrant drawn, and drew same, and when signed by the president, it was the plain duty of the clerk to attest it. His duty was purely and solely ministerial, and upon a failure and refusal on his part a compliance may be required by mandamus. [State ex rel. v. Adams, 161 Mo. 349, 364; State ex rel. v. Mason, 153 Mo. 25, 56; State ex rel. Register of Lands v. Secretary of State, 33 Mo. 293; State ex rel. Ford v. Trigg, 72 Mo. 365.]

"Where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial." [38 C. J. 598.]

Cases relied upon by appellant holding, in effect, that a municipal or corporate body may successfully defend a suit at law upon the ground that the claim is not based upon a written contract, in compliance with section 2164, Revised Statutes 1919, are not applicable to this situation. [City of Weston v. Bank, 192 S. W. 126.] Other authorities either confirm the holding herein made or may be distinguished from the instant case upon issues, facts, and the character of the parties.

Appellant further contends that the court erred in permitting the members of the board to testify that a verified statement of the claim had been filed with the board before the claim was allowed. The point sought to be made is that the witnesses were testifying to the contents of the statement. They were not so testifying; they merely testified to the fact of the filing of such statement.

All the points treated in the brief have been covered, and our conclusion is that the judgment of the learned trial court was correct and should be affirmed. The Commissioner so recomends. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion by Boyer, C., is adopted as the opinion of the court. The judgment is affirmed. All concur, except, *Trimble, P. J.,* absent.